## STECHI v. LEE.

No. 19313. Opinion Filed July 10, 1930.

Rehearing Denied Sept. 16, 1930.

T. W. Hunter and I. L. Strange, for plaintiff in error.

Sigler & Jackson and H. E. Ledbetter, for defendant in error.

DIFFENDAFFER, C. This action was commenced in the district court of Carter county to cancel of record an alleged cloud upon the title of plaintiff to certain lands in Carter county. The alleged cloud consisted of an attorney's contract between Nellie Stechi, plaintiff below, plaintiff in error, and Robert E. Lee, defendant in error, defendant below, whereby plaintiff employed defendant to determine and establish her interest in the estate of Ledcie Stechi, deceased, consisting of money in the hands of the Secretary of the Interior, and certain lands in Carter county. The lands were allotted to Eliza Stechi, a full-blood Choctaw Indian. The money was from oil royalties from said land. Eliza Stechi, the allottee, died intestate about 1916, leaving surviving her two minor children, Ledcie Stechi and Somner Stechi. She left no surviving spouse. Somner Stechi died while a minor, without having been married and without issue. Ledcie Stechi died thereafter in August, 1923, while a minor, leaving no issue, nor father, nor mother, nor brother, nor sister. Nellie Stechi was her maternal grandmother. Ruth Bohanon is the daughter of Wilson Bohanon and claims to be half-sister of Ledcie Stechi. Nellie Stechi, the grandmother, and Ruth Bohanon, the alleged half-sister, each claimed to be the sole heir at law of Ledcie Stechi.

Defendant's contract was to represent plaintiff in determining her interest in the money and land, and by its terms she agreed to give him as compensation for his services 40 per cent. of whatever should be recovered for her. He agreed to institute proceedings to determine said interest within 30 days from the date of the contract, which was dated August 17, 1923. The contract was filed for record in Carter county August 23, 1923.

On August 18, 1923, one Cleckler, on behalf of Ruth Bohanon, filed a petition for appointment as administrator of the estate of Ledcie Stechi. On the same day Lee, on behalf of plaintiff herein, filed a protest against the appointment of Cleckler, and asked the appointment of one Elam Johnson, who was nominated by Nellie Stechi. While the contest over the appointment of an administrator was pending, and on September 28, 1923, T. W. Hunter, as attorney for Nellie Stechi, filed an action in the district court of Carter county against Ruth Bohanon to quiet title to the land.

The contest over the appointment of an administrator in McCurtain county, and the litigation in Carter county, were carried along over a period of about two years, when a compromise was effected, resulting in a settlement, whereby Ruth Bohanon was given about 14/33 of the money; amounting to $55,929.13, of which $15,929.13 was paid to her attorneys, and Nellie Stechi was given 19/33 of the money, amounting to $75,929.13, and all the land. Of this $75,929.13, her attorneys, not including Lee, were paid $15,929.13. Lee was not paid anything. Thereafter this action was brought to cancel Lee's contract of record, it being alleged, in substance, that plaintiff did not sign said contract nor authorize or empower any one to sign same for her; that she never made such contract and did not discover its existence until shortly before this action was commenced; that the purported contract was fraudulent and void and constituted a cloud upon her title; that

"fraud had been practiced upon her by reason thereof by, the defendants to her detriment, and damage and to the injury since the same purports to have been made and recorded without her knowledge and consent. and is therefore a nullity."

Defendant filed his answer and cross-petition denying the forgery of the contract and denying at length that it had been procured by fraud. In his cross-petition he set out at length the services he claimed to have rendered under the contract in representing plaintiff in the county and district courts of McCurtain county, the district court of Carter county, and the United States District Court at Muskogee, and prayed for judgment for 40 per cent. of the money and

land, or reasonable compensation in the sum of $25,000. The cause was tried to the court, without a jury, resulting in a judgment for defendant under his contract, and decreeing a lien upon plaintiff's 60 per cent. interest in the land for the money judgment, from which judgment this appeal is prosecuted.

After the appeal was perfected, plaintiff in error Nellie Stechi died, and the cause was, on February 11, 1930, revived in this court in the name of Sezzarine Lewis, adult, Kalsey Samuel, Gardner Samuel, Aaron Nelson Samuel, and Osella Samuel, minors, by Agnes James Samuel, their legal guardian.

There are five assignments of error: the first being that the court erred in overruling the motion for a new trial; second, that the judgment is not sustained by sufficient evidence and is contrary to law; third, error in the admission of evidence; fourth, alleged error in refusing and ruling out competent evidence offered by plaintiff; and fifth, alleged error in holding the burden upon plaintiff, and not upon defendant.

The third and fourth assignments are not presented in the briefs, and will therefore be treated as abandoned.

As to the fifth assignment: The only way in which the question of who had the burden was presented was at the commencement of the trial. Each side insisted that the burden was upon the other. The court ruled that he considered the burden to be upon the plaintiff, and required her to proceed first. In this, we think there was no error. The action was brought by the plaintiff to cancel of record a contract which she alleged she had not signed or executed. The burden was properly cast upon plaintiff to prove the allegations of her petition. Upon this proposition, plaintiff cites only National Surety Co. v. Board of Education of City of Hugo, 36 Okla. 569, 129 Pac. 25, where it was held:

"The party who alleges a contract, either as a cause of action or a defense, has the burden of proving it, if the existence of the contract is put in issue; and he has the burden of proving every fact essential to the cause of action or defense. The rule applies to implied as well as to express contracts."

The case is not in point. There plaintiff was suing upon an alleged contract. There, the existence of the contract was in issue.

This leaves only the question of the sufficiency of the evidence. This requires an examination of the entire record. The clods had hardly settled upon the grave of Ledcie Stechi, yea, even before the body of this Indian orphan had been placed in its grave, according to some of the evidence, a swarm of enterprising "dealers" or "buyers" of "Indian claims" appeared in the little village of Smithville, located in the remote mountainous section of McCurtain county, near which her aged grandmother lived, seeking a chance to "purchase the claim." According to the petition for appointment of an administrator. Ledcie Stechi departed this life on or about August 15, 1923. Before August 17th, prospective purchasers of her estate arrived in Smithville from various places, as far away as Muskogee, Okla., and Mena, Ark. One Joshua Anderson, being in the vicinity, looking about the purchase of claims of this character, learned of the death of Ledcie Stechi, and went to see Nellie Stechi about purchasing her interest in the estate. He procured the help of a local citizen, and went to the home of Mrs. Stechi, about three miles in the country. It was learned at once that Ruth Bohanon, the alleged half-sister, through her energetic and watchful agents, would assert claim to the entire estate. This made it somewhat dangerous to purchase from the grandmother or the half-sister. Mr. Anderson at once sensed the situation, and decided it would be well for the grandmother to employ an attorney to press her claim. His idea being that later he "might buy the claim." He went to the grandmother, and, as he stated, explained the situation to her, suggesting that it would be necessary to have an administrator appointed. He explained to her that she was entitled to be appointed, or nominate some suitable person. She was 70 years old, could not speak or read the English language, and decided that she did not wish to serve. But she stated that she desired some one whom she could trust and who spoke the Choctaw language. Thereupon, she herself suggested the name of one Elam Johnson, a local preacher. She and her son, Noel Samuel, both knew Elam, and had confidence in him, and for this reason suggested him as administrator. It was then explained that an attorney would be needed. Again the old lady suggested that she would like some one who could speak the Choctaw language. Thereupon, Joshua suggested the names of three attorneys, among them being that of defendant Robert E. Lee. She knew none of them, but her son, Noel Samuel, knew Lee, at least by reputation, and it was agreed that he would be a suitable person to employ as attorney. T. H. Dubois, an attorney of experience in Indian land titles, was also agreed upon. Thereupon, Anderson returned to Smithville, and had the attorney's contract, a waiver of appointment as administratrix, and a written nomination of Elam, the preacher,

prepared, and returned with them that afternoon. Their contents were, according to the witnesses for defendant, carefully explained to her in the Choctaw language by Anderson and her son, Noel Samuel, though this is denied by her and indirectly by one Agnes Sanders, a granddaughter. Noel, her son, did not testify. Anyway, her signature thereto was written by her son, Noel Samuel. Her right thumb mark was placed after her name, and one Henry Johnson, a notary public who was present, took her acknowledgment, and Anderson and Henry Johnson took the contract of defendant and the situation was explained to him. He was not acquainted with Mrs. Stechi. He knew nothing about what had been done, but, when the matter was explained to him, he accepted the contract and signed his name thereto. On the next day he went to the county court to file a petition for the appointment of Elam Johnson as administrator, but found that the opposition had been equally, or more, active, and that one Wm. F. Cleckler, at the request of Ronnie Bohanon, the mother of Ruth, had already filed a petition praying that he be appointed administrator of the estate of Ledcie Stechi. Thereupon, Lee filed a protest against the appointment of Cleckler, and a prayer for the appointment of Elam Johnson, and at once wrote plaintiff and notified her of what he had done. A hearing was had at which the plaintiff, Nellie Stechi, appeared, represented by Lee. The matter was hotly contested, and the county judge, apparently desiring to be fair and impartial in the matter, refused to appoint either, and instead appointed one C. Gamble, a man of considerable influence in political affairs, as administrator. This was not satisfactory to Mrs. Stechi, and she appealed to the district court, being represented by defendant, Robert E. Lee. The matter was tried out in the district court, resulting in an order reversing the county court and directing that Elam Johnson, the choice of Mrs. Stechi, be appointed. This took considerable time, and it was not until sometime about June, 1925, that the matter was returned to the county court for further proceeding. In the meantime one T. W. Hunter had in some way, not shown by the record, been employed by Mrs. Nellie Stechi. He apparently advised her that Lee was all wrong in his idea of how the proceedings should be handled. Accordingly, about September 28, 1923, he filed an action in the district court of Carter county on behalf of Nellie Stechi against Ruth Bohanon to quiet title to the land involved. Robert E. Lee did not sign his name to the petition, but his name was entered on the appearance docket as one of the attorneys for plaintiff.

Action upon this petition was somewhat slow, but about November, 1924, a stipulation was entered into settling the entire controversy between Nellie Stechi and Ruth Bohanon by giving Ruth the sum of $25,000 and all the rest of the estate to Nellie Stechi, plaintiff herein. This settlement was made subject to the approval of the county court of McCurtain county and the Secretary of the Interior. Mr. Lee apparently was not present when this stipulation was entered into, as he did not sign it. But before the matter was passed upon by the Secretary of the Interior, a judgment was entered in the district court of Carter county in accordance with its terms, subject, however, to be set aside in case the settlement was not approved by the county court and the Secretary of the Interior.

The settlement was not approved, and no further action was taken until after the second hearing was had in the county court of McCurtain county on the appointment of an administrator.

Sometime about June, 1925, further proceedings were had in the county court. In the meantime, one R. C. Drake, described as "supervisor of probate attorneys," had been employed to assist Mr. Hunter. It appears that sometime during the pendency of the appeal in the district court of McCurtain county, he had entered into an oral agreement with Mr. Lewis A. Ledbetter, attorney for Ruth Bohanon, that one J. E. Dooley would be appointed administrator of the estate of Ledcie Stechi. This agreement is alleged to have been later reduced to writing and filed in the cause.

After the case had been remanded to the county court, the regular county judge was requested to certify his disqualification, which he did, and Hon. E. E. Cochran was agreed upon as special county judge to hear the matter of appointment of administrator. Instead of appointing Mr. Dooley, Judge Cochran, following the order of the district court, appointed Elam Johnson. This apparently displeased Messrs. Hunter and Drake, and they joined in a second appeal to the district court. Defendant, Lee, disagreed with them and purporting to represent Mr. Johnson filed a motion to dismiss the appeal. Dissension arose between the attorneys, and it was decided to test the matter out as to who represented Mrs. Nellie Stechi. This was done by placing her on the witness stand, where she swore she had never employed Mr. Robert E. Lee to represent her. After this he appears to have taken no part in the proceedings, other than the motion to dismiss the appeal.

While the matter stood thus, a second stipulation was entered into, whereby the whole matter was compromised by giving Ruth Bohanon $55,929.13 in cash and Nellie Stechi $75,929.13 in cash and all the land. This stipulation was also made subject to the approval of the county court of McCurtain county and the Secretary of the Interior. It provided that out of the cash settlement each side should pay their several attorneys $15,929.13, stipulating just how much each of eight attorneys should receive. This settlement was approved with some slight changes, which were accepted, resulting in a complete settlement of the entire controversy, so that Ruth Bohanon received approximately $40,000 and her attorneys received about $14,000. Mrs. Nellie Stechi received approximately $60,000 and her attorneys received $15,929. 13. Before this settlement could become effective it was necessary to have the judgment, which had theretofore been entered in the district court of Carter county, vacated. Mr. Lee joined in a stipulation that the judgment might be vacated. Upon this stipulation, the judgment was vacated and later the cause was dismissed. In the stipulation under which the case was finally settled, Mr. Lee's name did not appear as one of the attorneys for Mrs. Stechi, and he got nothing whatever thereunder for his services. It was apparently upon the testimony of Mrs. Stechi, to the effect that she had never employed him, that he was not provided for in the settlement. The record conclusively shows, however, that she did execute the attorney's contract by placing her thumb mark thereupon, and that her name was signed thereto by her son, Noel Samuel. The original contract is in the record, together with her thumb mark made in the presence of the court. Her son, Noel Samuel, signed the contract as a witness, and her name is clearly written in his handwriting. There is much evidence in the record tending to show that Mr. Lee was, in fact, employed by her; that she was present in court when he presented her protest against the appointment of Cleckler, and her petition for the appointment of her friend, Elam Johnson; that he prosecuted the appeal to the district court and succeeded in reversing the order appointing the politician; that he spent much time in preparing and briefing the case for trial in Carter county; that he, Mr. Hunter, and Mr. Drake apparently worked in complete harmony until the disagreement arose over the appointment of Mr. J. E. Dooley. After that Mr. Hunter and Mr. Drake apparently ignored him, and in the final settlement overlooked him or designedly left him out as one of the attorneys.

There is abundant evidence tending to support the judgment. Plaintiff not only utterly failed to prove her allegations that she never signed the contract, but also failed to establish the meagre allegations of fraud in the procurement thereof, and the record clearly shows that she knew of and approved his efforts to have Elam Johnson appointed administrator.

From the entire record, we are entirely in accord with the position of the trial court in the following discourse which occurred at the close of the hearing, wherein, in discussing the question of whether or not there was a contract, it was said:

"By the Court: It looks like from the testimony of Mr. Tom Hunter there was. You testified up to a certain time Mr. Lee prepared all the papers. By Mr. Hunter (of counsel for plaintiff): In the administration case, yes. By the Court: That was necessary in the preparation of the case. Two of you lawyers get off and start a lawsuit, and proceed down the line together, and later you remain in and the other fellow is shoved away. You start in on his lawsuit, you might say, and wind up on your own lawsuit. By Mr. Hunter (of counsel for plaintiffs): It was a different suit altogether. By the Court: I understand. It appears to me, as good a friend as I am to you, Mr. Hunter, I think you routed Mr. Lee off the teat."

We are unable to see from the record where defendant has been guilty of any fraud, wrongdoing, or unethical conduct. When the contract was presented to him, it was merely an offer of employment, the terms of which had been fixed without any knowledge on his part. He accepted the employment, and so far as the record discloses proceeded promptly and in good faith to carry out the contract. He took an active part in all the proceedings down to the point where plaintiff positively denied that she had employed him, and, in effect, repudiated the contract.

The contract here involved is one that is specifically authorized by statute. Section 4101, C. O. S. 1921.

In 6 C. J. p. 735, the following rule is stated:

"An attorney may make an enforceable contract with one about to become his client for the payment of compensation for services to be rendered, and such a contract is not subject to the particular scrutiny of the court, for the client is regarded as competent to judge for himself what is a proper sum to pay for services. The validity of the contract does not depend on the value of the services rendered."

And at page 775, it is said:

"A client cannot, by discharging an attorney, deprive him of his lien, unless the discharge is for good cause."

In Myers v. Crockett, 14 Tex. 257, it was said:

"And, in such a case, where the attorney had entered upon and was proceeding to perform the services contracted for, and the conduct of the case was thus wrested from him by his client without any fault on his part, there would seem to be much reason in holding that he was entitled to recover the full amount of the fee contracted to be paid for the services contemplated by the contract." Reprint p. 129.

To the same effect is White v. Am. Law Book Co., 106 Okla. 166, 233 Pac. 426.

Courts cannot make contracts for parties before them. They can only enforce them when made.

The judgment is not against the clear weight of the evidence, but is in accord with the overwhelming weight thereof, and should, therefore, be affirmed.

TEEHEE, LEACH, HERR, and EAGLETON, Commissioners, concur.

By the Court: It is so ordered.

Note.—See under (1) 4 R. C. L. p. 499; R. C. L. Perm. Supp. p. 1147. See "Cancellation of Instruments," 9 C. J. §189, p. 1252. n. 72; §195, p. 1256, n. 30.