**UNITED STATES v. LEE et al.**

No. 1862.

Circuit Court of Appeals, Tenth Circuit.

Dec. 21, 1939.

Rehearing Denied Feb. 6, 1940.

Charles N. Champion, Asst. U. S. Atty., of Muskogee, Okl., and Norman McDonald, Atty., Department of Justice, of Washington, D. C. (Norman M. Littell, Asst. Atty. Gen., Cleon A. Summers, U. S. Atty., of Muskogee, Okl., C. W. Leaphart, Sp. Asst. to Atty. Gen., Thomas Harris and Frederick W. Whiteside, Attys., Department of Justice, both of Washington, D. C., W. F. Semple, of Tulsa, Okl., A. H. Ferguson, of Durant, Okl., and Tom Finney, of Idabel, Okl., on the brief), for appellant.

H. A. Ledbetter and Guy H. Sigler, both of Ardmore, Okl. (H. E. Ledbetter and P. M. Jackson, both of Ardmore, Okl., on the brief), for appellees.

Before LEWIS, BRATTON, and HUXMAN, Circuit Judges.

BRATTON, Circuit Judge.

The appeal in this case presents for determination conflicting claims to certain land, and to the proceeds of royalties accruing under two oil and gas leases. Eliza Stechi, a full-blood enrolled Choctaw Indian, received a homestead allotment of land, a part of which was situated in Carter County, Oklahoma, and a surplus allotment, all of which was situated in that county. The allottee died intestate in 1918, seized and possessed of such land, and left as her sole heirs at law two children, Somner Stechi and Ledcie Stechi, both full-blood Indians of the Five Civilized Tribes, born after March 4, 1906. Somner Stechi died in January, 1919, at about four months of age. Ledcie Stechi, through her guardian, and others, executed two oil and gas leases. The first, executed in June, 1919, covered ten acres of the homestead allotment, situated in Carter County; and the second, executed in October, 1919, covered ten acres of the surplus allotment. Both leases were approved by the county court in Oklahoma having jurisdiction of the settlement of the estate of the allottee, and by

the Secretary of the Interior; and they were placed of record. Skelly Oil Company subsequently acquired and still owns both of them. Oil and casinghead gas were developed on the leased premises, and The Carter Oil Company purchased substantial quantities thereof. Ledcie Stechi died in 1923, at the age of seven years, leaving as her sole heir at law her maternal grandmother, Nellie Stechi, a full-blood enrolled Choctaw Indian, and mother of the allottee. Three days after Ledcie Stechi died, Nellie Stechi entered into a written contract with T. H. DuBois and Robert E. Lee, attorneys, in which it was provided that she employed them irrevocably to represent her in establishing her rights in the estate of the allottee, and that their compensation for services should be forty per cent of whatever might be recovered in money, chattels, or lands. The contract was not approved by any court or by the Secretary of the Interior. It was recorded in Carter County. DuBois performed very little service under the contract and soon disclaimed any further interest in it. Lee represented Nellie Stechi in various proceedings respecting her interests in the estate for a period of about two years. He was then discharged, and she was thereafter represented by other attorneys.

Nellie Stechi filed suit against DuBois and Lee in the District Court of Carter County for cancellation of the contract. By answer and cross petition, Lee sought to enforce and recover on the contract. At the trial he disclaimed any interest in the tract which constituted the surplus allotment, confining his contention to the land constituting the homestead allotment and the money arising therefrom as royalties. He recovered judgment for $30,791.80, representing forty per cent of the royalties which had accrued to January 1, 1928, under the lease on the homestead tract, an undivided forty per cent interest in the ten-acre tract out of the homestead allotment covered by the lease, together with forty per cent of the rents and royalties accruing after January 1, 1928, a forty per cent interest in the remainder of the homestead allotment, and a lien on the undivided sixty per cent of the homestead allotment to secure the money judgment. Nellie Stechi appealed to the Supreme Court of the state and died pending the appeal. The cause was revived in the names of her heirs, and the judgment was affirmed. Stechi v. Lee, 145 Okl. 41, 291 P. 50. The United States was not a party to the suit,

but more than two years after it was instituted, Nellie Stechi caused notice of its pendency to be served on the Superintendent of the Five Civilized Tribes under section 3 of the Act of April 12, 1926, 44 Stat. 239, 240. Three days after the judgment of the district court was entered the United States filed in the cause a petition for leave to intervene and remove the cause to the United States Court for Eastern Oklahoma. A notation or informal order was entered in the records of the court refusing the petition. A certified transcript of the proceedings in the state court was then filed in the United States Court, and that court issued a temporary injunction restraining further proceedings in the state court. Lee lodged motions to dissolve the injunction and to remand the cause to the state court. Both motions were pending without disposition at the time the supreme court of the state affirmed the judgment, previously adverted to. Thereafter the injunction was dissolved and the cause was remanded to the District Court of Carter County. Execution issued out of the District Court of Carter County on the judgment rendered in favor of Lee. The undivided sixty per cent interest in that part of the homestead allotment covered by the lease was levied upon and sold to H. E. Ledbetter, as trustee, for $875. The heirs of Nellie Stechi appealed from the order of the court confirming such sale. The appeal was dismissed. Lewis v. Lee, 159 Okl. 257, 15 P.2d 3. A writ of garnishment subsequently issued out of the state court directing the Superintendent and Disbursing Agent of the Indian Agency to pay over royalties exceeding $11,000 then in their custody, to be applied in satisfaction of the balance due on the judgment. The Superintendent and Disbursing Agent answered that the moneys were under the exclusive control of the Secretary of the Interior who was not a party to the proceeding. By agreement of the parties, the proceeding was stayed while in that status.

The owners of the judgment rendered in the District Court of Carter County filed a claim with the administrator of the estate of Nellie Stechi for the amount of the judgment less the $875 received for the sale of the land to Ledbetter, as trustee. The heirs of Nellie Stechi filed a protest against the claim, and the administrator rejected it. The owners of the judgment filed suit against the administrator in the District Court of McCurtain County on such claim. The administrator and the heirs defended.

The court found against plaintiffs on the ground that the claim had not been presented within the four months period allowed by law for such purpose. The supreme court reversed the judgment, holding that the claim had been seasonably filed. Lee v. Epperson, 168 Okl. 220, 32 P.2d 309.

The United States, in its own right and in its capacity as guardian of Sezzarine Lewis, Kelsey Samuel, Gardner Samuel, Aaron Nelson Samuel, and Ozella Samuel, full-blood Choctaw Indians, and sole heirs of Nellie Stechi, then filed this suit in the United States Court for Eastern Oklahoma against DuBois, Lee, Ledbetter, individually and as trustee, Skelly Oil Company, The Carter Oil Company, and others, to establish and quiet title in the homestead and surplus allotments, subject to the two oil and gas leases covering the twenty acres; to establish title and right to all royalties theretofore or thereafter derived under the two leases, or otherwise, including royalty funds which had accumulated in the custody of the Secretary of the Interior; to bar all defendants, except Skelly Oil Company and The Carter Oil Company from any right, title, interest or estate in such lands and royalty funds; to cancel of record the contract between Nellie Stechi and DuBois and Lee, the judgment of the District Court of Carter County, the order confirming the sale, the sheriff's deed, and the trust agreement between Ledbetter and others; and for an accounting on the part of the Skelly Oil Company and The Carter Oil Company for royalties arising under such leases. By answer all defendants, except the two oil companies, pleaded the contract which Nellie Stechi entered into with DuBois and Lee, the judgment of the District Court of Carter County, the sale of the land, the order confirming the sale, and the judgment of the District Court of McCurtain County relating to the claim against the administrator. The oil companies answered that due to adverse claims and demands they had withheld payment of the royalties on all oil produced from the leased premises since January 1, 1931, and on all casinghead gas produced since December 31, 1932; and that they were ready and willing to account for and pay such royalties to the party or parties legally entitled thereto, as the court might direct.

In a carefully prepared opinion, the court determined the questions in favor of the defendants. 24 F.Supp. 814. A decree was entered which provided that the United States take nothing for the benefit of the heirs of Nellie Stechi; that the judgment of the District Court of Carter County, the sale made under such judgment, and the sheriff's deed were valid; that the title in the then present owners be quieted; and that the royalty funds accrued and accruing, those in the hands of the Secretary of the Interior and those retained by Skelly Oil Company and The Carter Oil Company, be awarded and paid accordingly. The United States appealed.

A question of primary importance is whether the land constituting the homestead allotment was restricted against alienation by Nellie Stechi at the time of the execution of the contract with DuBois and Lee. The allottee, her two children, and Nellie Stechi were full-blood Indian citizens and members of the Five Civilized Tribes. Under the applicable law of descent and distribution, Nellie Stechi inherited the land on the death of Ledcie Stechi. Section 1 of the Act of May 27, 1908, 35 Stat. 312, provides, among other things, that all allotted lands of enrolled full-blood Indians of the Five Civilized Tribes shall not be subject to alienation, contract to sell, power of attorney, or any other incumbrance prior to April 26, 1931. The pertinent part of Section 9 is in this language: "That the death of any allottee of the Five Civilized Tribes shall operate to remove all restrictions upon the alienation of said allottee's land: Provided, That no conveyance of any interest of any full-blood Indian heir in such land shall be valid unless approved by the court having jurisdiction of the settlement of the estate of said deceased allottee: Provided further, That if any member of the Five Civilized Tribes of one-half or more Indian blood shall die leaving issue surviving, born since March fourth, nineteen hundred and six, the homestead of such deceased allottee shall remain inalienable, unless restrictions against alienation are removed therefrom by the Secretary of the Interior in the manner provided in section one hereof, for the use and support of such issue, during their life or lives, until April twenty-sixth, nineteen hundred and thirty-one; but if no such issue survive, then such allottee, if an adult, may dispose of his homestead by will free from all restrictions; if this be not done, or in the event the issue hereinbefore provided for die before April twenty-sixth, nineteen hundred and thirty-one, the land shall then descend to the heirs, according to the laws of descent and

distribution of the State of Oklahoma, free from all restrictions * * *."

The section embraces and covers three separate situations: First, where land of an allottee descends upon his death to others than full-blood Indian heirs, restrictions against alienation are removed, and those acquiring it may alien or convey it. Second, where it descends to full-blood Indian heirs, they also are authorized to alien and convey it provided the conveyance is approved by the court having jurisdiction of the settlement of the estate of the deceased allottee. And third, where issue born since March 4, 1906, survives an allottee of one-half or more Indian blood, the homestead remains inalienable, unless restrictions are removed by the Secretary of the Interior in the manner provided in section 1, for the use and benefit of such issue during the remainder of his life but not later than April 26, 1931; and where the allottee did not make a will disposing of the homestead, and such issue born after March 4, 1906; dies before the specified date in 1931, the homestead then and thereupon descends according to the law of Oklahoma relating to descent and distribution, free and clear of any restriction against alienation. The Government contends that the two provisos must be construed together, and that when so construed the homestead descends on the death of the special issue prior to April 26, 1931; free of restrictions against alienations but the conveyance must be approved by the county court in the manner required in the first proviso. The general function of a proviso is to except something from the basic provision, or to qualify or restrain its general scope, or to prevent misinterpretation. United States v. Morrow, 266 U.S. 531, 45 S.Ct. 173, 69 L.Ed. 425. These two provisos each relate back to the basic provision and qualify or limit it, but they are separate and independent of each other. Neither supplements, implements, conditions or extends into the other. The provision in the first requiring approval of a conveyance by the court cannot by any recognized rule for the interpretation of statutes be construed as projected into the second.

It is also urged that the entire act and prior and subsequent legislation in pari materia must be taken into consideration in construing the seeming inconsistency between the second proviso and the first. The argument is that the detailed care with which Congress legislated for the protection of full-blood Indians in earlier and later acts, the policy, evinced by the Act of 1908 and other acts, to retain supervision until April 26, 1931, over allotted lands while in the hands of full-bloods, and the language contained in section 9, all considered together, indicate a legislative intent and purpose that the restriction contained in the first proviso should apply to a homestead allotment inherited by full-blood Indians from the heir of the allottee born after March 4, 1906, and that such full-bloods cannot alien it without the conveyance being approved by the county court having jurisdiction of the settlement of the estate of the deceased allottee. Congress has from time to time evidenced a purpose to retain supervision over allotted lands while in the hands of full-blood Indians of the Five Civilized Tribes. Still the argument now advanced is met with the difficulty that the second proviso does not contain the limitation or restriction which is asserted. It provides in clear language that where an allottee of one-half or more Indian blood did not make a will disposing of the homestead allotment, and where surviving after-born issue dies prior to the named date in 1931, the homestead thereupon descends according to the laws of Oklahoma relating to descent and distribution, free of restrictions. No limitation upon the right of alienation is provided. No approval of a deed or other conveyance is exacted. The broad language in which the proviso is couched should not be limited or restricted by judicial interpretation which amounts to the insertion of language which Congress omitted. No warrant exists in law for the placing of a construction upon the proviso which is tantamount to adding at its conclusion a provision that a conveyance must be approved by the county court having jurisdiction of the settlement of the estate of the deceased allottee.

The Supreme Court of Oklahoma considered this question in Grisso v. Milsey, 104 Okl. 173, 230 P. 883. There the allottee died seized of his homestead allotment, and survived by his wife and several children, one of whom was born after March 4, 1906. It was held that a conveyance made by the widow and other children prior to the death of the after-born heir in 1919 was invalid; that on the death of such heir the homestead descended free of restrictions against alienation; and that a conveyance thereafter made by

the heirs of such deceased child of the allottee did not require the approval of the county court. The United States District Court for Eastern Oklahoma considered the statute in United States v. Martin, 45 F.2d 836. The question there was the validity of a deed purporting to convey the homestead allotment of a deceased full-blood Choctaw, executed in 1929 by the surviving son of the allottee, born after March 4, 1906, and approved by the county court. In reaching the conclusion that the deed was invalid, the court cited Grisso v. Milsey, supra, with approval. In holding that other heirs of a deceased allottee had no alienable interest in the homestead allotment during the lifetime of the issue born after March 4, 1906, but not later than April 26, 1931, this court cited and relied to some extent upon Grisso v. Milsey, supra. Holmes v. United States, 10 Cir., 53 F.2d 960. The same question came before this court in Johnson v. United States, 10 Cir., 64 F.2d 674. Doubt was expressed concerning the correctness of the holding in Grisso v. Milsey and in United States v. Martin, supra, but it was said that the construction there placed upon the statute had become a rule of property in both the state and federal courts of Oklahoma and should be followed. While the narrow question now under consideration was not involved, the view that on the death of the afterborn or special issue of the allottee before the fixed date in 1931, the homestead descended under the state law of descent and distribution without restrictions against alienation and, therefore, a conveyance subsequently executed by the heirs of such deceased issue is valid without approval of the county court seems to find support in Parker v. Riley, 250 U.S. 66, 39 S.Ct. 405, 63 L.Ed. 847.

The Government places strong reliance upon King v. Ickes, 62 App.D.C. 83, 64 F. 2d 979, and United States ex rel. Warren v. Ickes, 64 App.D.C. 27, 73 F.2d 844, but they do not lend aid. The facts in the first were that with the consent of the Secretary of the Interior the allottee executed an oil and gas lease covering his homestead and later died seized of such homestead. His widow and two children were his sole heirs at law. One of the children was born after March 4, 1906, and died in 1930. The widow and the other child conveyed the homestead by deed which was approved by the county court having jurisdiction of the settlement of the estate of the allottee. Thereafter the child who had joined in the

deed brought suit against the Secretary of the Interior to recover a share of the money which represented royalties and profits from the land. After referring to section 9, as amended, the court stated that on the death of the special heir, prior to the year 1931, restrictions against alienation with approval of the county court were removed, and further that the land was unrestricted at the institution of the suit. But the controversy presented and decided was the status of the fund which had accumulated in the hands of the Secretary. The contention of the Secretary was that the royalties derived from the land prior to the removal of restrictions were separate and apart from the land and still remained under his control for the use and benefit of the heirs until the expiration of the extended period of restrictions. Sustaining the contention, the court held that section 1 of the Act of January 27, 1933, 47 Stat. 777—imposing restrictions until April 26, 1956, on all funds and securities then held or thereafter coming under the supervision of the Secretary of the Interior, belonging to and only so long as belonging to Indians of the Five Civilized Tribes of one-half or more Indian blood—applied, and that for such reason plaintiff could not prevail. The question whether approval of the deed by the county court was essential to its validity was not involved. In the other case, the allottee died seized of his homestead allotment, and leaving as his heirs at law his wife and a son, born after March 4, 1906. In 1915, the widow, acting for herself and as guardian for the son, executed an oil and gas lease on the homestead, which was approved by the Secretary of the Interior. The son died in 1930, and litigation arose respecting his estate. In July 1931, the widow entered into a written contract with an attorney in which she employed him to represent her in the litigation and agreed that he should receive as his compensation one-third of the land and moneys involved; and such contract was approved by the county court. She prevailed in the litigation, and thereafter the United States on the relation of the attorney brought mandamus to compel the Secretary to pay him the share of the fund then in the hands of the Secretary representing proceeds of royalties accrued under the lease, to which he asserted title and ownership under the contract. Payment had been refused and the suit was defended on the ground that the funds were restrict-

ed by the Act of January 27, 1933, supra. The court held that while Congress had plenary power to impose or reimpose restrictions on property of an Indian, the title and interest of the attorney in the land and money constituting the estate became fixed prior to the enactment of the statute in 1933, and therefore the act did not serve to place restrictions on his share of the money in the hands of the Secretary. The question whether approval of the contract was requisite to its validity was not involved or decided, but the court said in the course of its opinion that the death of the son of the allottee in 1930 lifted all restrictions from the homestead allotment and the royalties which had been derived therefrom. The question presented is freighted with difficulty, but we think Nellie Stechi inherited the homestead allotment free of restrictions against alienation, and that approval by the county court of the contract which she entered into with DuBois and Lee was not essential to its validity.

■ The case of Grisso v. Milsey, supra, was decided in 1924, and the construction there placed upon section 9 became a rule of property in the State of Oklahoma. The construction placed by a state court on a federal statute is not binding on federal courts. But such construction which has become a rule of property and for years has governed transfers of real estate should not be overturned even though it may be open to doubt. Reynolds v. Fewell, 236 U. S. 58, 35 S.Ct. 230, 59 L.Ed. 465; Truskett v. Closser, 236 U.S. 223, 35 S.Ct. 385, 59 L.Ed. 549; Johnson v. United States, supra.

■ Next comes the question of the effect of the judgment of the District Court of Carter County rendered in the suit which Nellie Stechi instituted against DuBois and Lee to cancel and set aside the contract. Since the homestead was free of all restrictions against alienation at the time of the execution of the contract, that court clearly had jurisdiction of the subject matter and of the parties. The authenticity of the contract, the due performance on the part of Lee, the amount due him, his ownership of a part of the homestead, and his right to a lien on the remainder to secure the amount due him were issues tendered and adjudicated. That ad-

judication is binding and constitutes res judicata as to the parties to the action. But it is contended that such judgment is not binding on the United States since it was not a party. The United States is not bound by the judgment of a state court in respect of restricted property of an Indian ward where it was not a party. Bowling v. United States, 233 U.S. 528, 34 S.Ct. 659, 58 L.Ed. 1080. But as has been said, the property in question was not restricted at the time the contract was executed and at the time the judgment of the state court was entered. Nellie Stechi was unrestricted in her right to contract with respect to such property or to convey it. She exercised that right. A state court adjudicated her rights under the contract, and the decree has become final. A state court of competent jurisdiction in Oklahoma may render a valid judgment in respect of unrestricted property of an Indian of the Five Civilized Tribes. And such a judgment constitutes res judicata as to the Indian, and it is not open to attack in a later suit brought by the United States, except on jurisdictional grounds, even though the United States was not a party to the suit.

■ The remaining contention which calls for discussion is assuming that the homestead tract was not restricted against alienation, the decree errs in directing the Secretary of the Interior and the Superintendent and Disbursing Agent, respectively, of the Five Civilized Tribes to pay over the funds in their custody and control representing proceeds of royalties. Section 1 of the Act of January 27, 1933, 47 Stat. 777, supra, is relied upon to sustain the point. That section is textually limited to funds and securities under the supervision of the Secretary of the Interior, belonging to and only so long as belonging to members of the Five Civilized Tribes of one-half or more Indian blood. It plainly applies only to moneys and securities belonging to Indians. The rights of Lee and his assignees to their share in the funds in the hands of the Secretary and his subordinates had become fixed and determined prior to the time the statute became effective. For that reason the statute has no application whatever to their share of such fund. United States v. Ickes, supra.

The decree is affirmed.