**ICKES, Sec. of Interior, v. LEDBETTER.**

No. 8337.

United States Court of Appeals for the
District of Columbia.

Decided April 26, 1943.

Mr. Norman MacDonald, of Washington, D. C., Attorney, Department of Justice, with whom Assistant Attorney General Norman M. Littell and Messrs. Edward M. Curran, United States Attorney, and Vernon L. Wilkinson, both of Washington, D. C., Attorney, Department of Justice, were on the brief, for appellant.

Mr. Neil Burkinshaw, of Washington, D. C., with whom Messrs. F. M. Goodwin, Daniel B. Maher, and Dennis Collins, all of Washington, D. C., were on the brief, for appellee.

Before GRONER, Chief Justice, and MILLER and VINSON, Associate Justices.

VINSON, Associate Justice.

In 1928, the assignors of the appellee, Ledbetter, were awarded, inter alia, a money judgment by the District Court of Carter County, Oklahoma. The succeeding fifteen years have been spent in unsuccess-

ful effort to secure satisfaction of that judgment. The current phase of this effort is represented by the action for mandatory relief which Ledbetter, as trustee, instituted in the District Court, here, to compel the appellant, Harold L. Ickes, Secretary of the Interior (hereinafter referred to as the Secretary),[1] to pay over certain funds in his control. The District Court granted the relief sought, and the Secretary seeks to establish on this appeal the erroneous quality of the award.

The history of the claim and the protracted litigation associated therewith is somewhat detailed: In 1923, one Nellie Stechi, a full-blood Choctaw Indian woman, was a prospective heir to the estate of her deceased granddaughter. The expected inheritance consisted of a homestead allotment of land, part of which was in Carter County, Oklahoma, and a surplus allotment of land, all in Carter County, ten acres of each allotment being committed to oil and gas leases. Nellie Stechi entered into a written contract, unapproved by the Secretary or by any court, with Robert E. Lee and T. H. DuBois, attorneys, retaining them to establish whatever rights she had in the estate, and promising them in return for their professional efforts forty percent of whatever might be recovered in money, chattels, or lands. Soon thereafter, DuBois disclaimed any interest in the contract, but Lee did represent Nellie Stechi in various proceedings respecting her interests in the estate for a period of about two years. Lee was then discharged and the litigation prosecuted to a successful conclusion by other counsel. As a result, Nellie Stechi was adjudged the owner of the lands which had belonged to her granddaughter, and the royalties under the oil and gas leases thereon. Rents and royalties had been paid by the lessee oil companies to the agents of the Secretary of the Interior, in the belief that the homestead allotment and the royalties accruing therefrom remained restricted as provided by the Act of May 27, 1908.[2]

Her rights to the inheritance established, Nellie Stechi filed suit in the District Court of Carter County, Oklahoma, in an effort to cancel her contract with Lee and DuBois. On January 16, 1928, however, this contract was upheld and Lee was granted judgment against the Indian woman for $30,791.80, representing forty percent of the royalty oil produced and sold from the homestead allotment between the years 1921 to 1927, inclusive; an undivided forty percent interest in the leased section of the homestead, together with forty percent of the rents and royalties accruing after January 1, 1928; a forty percent interest in the remainder of the homestead allotment; and a lien on the undivided sixty percent of the homestead allotment to secure the money judgment. On November 17, 1929, pending an appeal to the Supreme Court of Oklahoma, Nellie Stechi died. The appeal was revived in the name of her heirs, Sezzarine Lewis, Kelsey Samuel, Gardner Samuel, Aaron Nelson Samuel, and Ozella Samuel (hereinafter referred to as the Indian heirs), and the judgment of the District Court of Carter County was affirmed by the Supreme Court of Oklahoma.[3] Lee afterwards levied upon the undivided sixty percent of that part of the homestead allotment covered by the lease, and it was sold to the appellee, Ledbetter, as trustee, for $875. The Supreme Court of Oklahoma dismissed an appeal[4] by the Indian heirs from the order of the District Court of Carter County of August 13, 1931, which confirmed this sale and found that a deficiency judgment stood in the sum of $30,791.80, with six percent interest thereon from January 16, 1928, until paid, plus costs of the action, and less the credit of $875. Meanwhile, in the District Court of McCurtain County, Oklahoma, Lee and Ledbetter had asserted their claims under the Carter County judgment against the administratrix of the estate of Nellie Stechi. This contest, which was carried to the Supreme Court of Oklahoma, resulted in an allowance against the administratrix in the sum of $36,765.16, with interest thereon at six percent from August 13, 1931, until paid.[5]

On January 6, 1933, at the instance of the Secretary, the United States, in its own right and in its capacity as guardian of the Indian heirs, filed suit in the District Court of the United States for the Eastern District of Oklahoma against Lee, DuBois, and Ledbetter (individually and as trustee).

---

[1] Although there have been several incumbents since 1923, we have, for simplicity, designated the Secretary as though the same individual had held the office throughout.

[2] 35 Stat. 312, c. 199.

[3] Stechi v. Lee, 1930, 145 Okl. 41, 291 P. 50.

[4] Lewis v. Lee, 1932, 159 Okl. 257, 15 P.2d 3.

[5] Lee v. Epperson, 1934, 168 Okl. 220, 32 P.2d 309.

The Government sought therein to establish and quiet title in the homestead and surplus allotments; to establish title and right to all royalties derived under the leases; to cancel of record the contract between Nellie Stechi and Lee and DuBois; and to cancel the judgments of the State courts of Oklahoma. The Government contended that, under the provisions of the Act of 1908, the land constituting the homestead allotment was restricted against alienation by Nellie Stechi at the time of the execution of the contract with DuBois and Lee. But the court ruled against this construction, holding that the homestead allotment had descended to Nellie Stechi free from all restrictions, and that, therefore, the accumulated gas and oil royalties from the ten acres in question were not restricted funds and not subject to the management or control of the Secretary. The court, inter alia, held that the Government take nothing for the Indian heirs; upheld the Carter County judgment and the sale made thereunder; held that the title in the then present owners be quieted; upheld the judgment of the District Court of McCurtain County against the administratrix of the estate of Nellie Stechi for $36,765.-16 (representing the Carter County judgment of $30,791.80, with accrued interest at six percent per annum to and including August 13, 1931, plus $75 court costs, and minus the credit of $875), together with six percent interest per annum thereon from August 13, 1931, until paid; ordered the Secretary of the Interior and others to pay Ledbetter the said judgment out of the proceeds from the sale of oil and gas derived from the lands described; and further ordered the Secretary and others to pay Ledbetter forty percent of the proceeds from the sale of oil and gas royalty derived from January 1, 1928, until September 2, 1931, amounting to $1,849.84.[6] No interest was awarded on the last sum.

This construction of the 1908 Act was upheld by the United States Circuit Court of Appeals for the Tenth Circuit,[7] which in affirming the judgment said: " * * * Nellie Stechi was unrestricted in her right to contract with respect to such property or to convey it. She exercised that right. A state court adjudicated her rights under the contract, and the decree has become final. A state court of competent jurisdiction in Oklahoma may render a valid judgment in respect of unrestricted property of an Indian of the Five Civilized Tribes. And such a judgment constitutes res judicata as to the Indian, and it is not open to attack in a later suit brought by the United States, except on jurisdictional grounds, even though the United States was not a party to the suit." [8]

Ledbetter later initiated the instant action for mandatory relief against the Secretary, as sole defendant, in the District Court of the United States for the District of Columbia. The complaint recited the various State and Federal proceedings. The District Court upon the pleadings ordered the Secretary to pay to Ledbetter as trustee $36,675.16, with interest at six percent per annum from August 13, 1931, until paid, and $1,849.84, *with interest at six percent per annum from September 19, 1938* (the date of the judgment of the United States District Court in Oklahoma), *until paid*. In appealing, the Secretary maintains (1) that the funds are held by him in trust for the Indian heirs; (2) that the payment thereof is not a proper subject for a suit in mandamus in that it requires that he exercise a discretion in choosing between the Indian heirs and Ledbetter as owners of the fund; (3) that the Indian heirs have not been joined as parties; (4) that, in any case, he was not a party to the Federal proceeding in Oklahoma; and finally (5), he contests the amount of interest awarded.

That the funds belonged to the appellee (and not to the Secretary in trust for the Indian heirs) has already been decided by the State courts of Oklahoma and the Federal courts in the Tenth Circuit, over whose decrees we have no appellate jurisdiction. Ownership in the funds having been established, we have only to determine whether the appellee has proceeded properly to gain possession of that which he has been adjudged to own.

We believe that mandamus was an appropriate remedy in the circumstances. The complaint does not invoke the Secretary's discretion; all necessary discretion has been exercised for him by the decree of the United States District Court in Oklahoma. Naught remains for him to do but administer that decree. In order to find sufficient basis for affirming the mandatory award, we need look no further

---

[6] United States v. Lee, D.C.E.D.Okl., 1938, 24 F.Supp. 814.

[7] United States v. Lee, 10 Cir., 1939, 108 F.2d 936, cert. not sought.

[8] Id., 10 Cir., 108 F.2d at page 942.

into the decree of that court than its conclusions that the contested funds were unrestricted and that they belonged to the appellee.

The authority of our decision in the strikingly similar case of United States ex. rel. Warren v. Ickes, Secretary of the Interior,[9] is controlling here. In the Warren case, the Indian allottee of a restricted homestead in Oklahoma had executed an oil and gas lease thereon. The accumulated royalties were held by the Secretary. The allottee died, and after an intermediate estate which terminated upon the death of his son, the widow of the allottee entered into a written contract with Frank L. Warren, employing him as her attorney to establish her interest in the estate. Warren was to receive for his services, among other things, one third of the land and funds involved. He successfully litigated the claim, and the widow deeded the appropriate share of the land involved and issued a promissory note to Warren representing the value of a one-third share of the royalties in the hands of the Secretary involved in the litigation. The note was secured by a mortgage on the ramainder of the land. Warren brought mandamus in the Supreme Court of the District of Columbia (now the District Court of the United States for the District of Columbia) against the Secretary for payment of this amount, and the widow, who was not made a party to the proceeding, requested the Secretary, by letter, so to pay. He refused. The trial court denied relief, and Warren appealed to this court. Construing the Act of 1908, we held that the funds were not restricted; that the assignment of the one-third interest by the widow created an equitable lien; that the title to the money in question in the hands of the Secretary passed from the widow to Warren; that the terms of the contract were completely satisfied with the entry of the decree of the court fixing the estate in the widow, the subsequent deeding of the land to Warren, the execution of the mortgage to secure the payment of the money in the hands of the Secretary, and the demand by Warren upon the Secretary; that the contract created vested rights in Warren to the funds, which were being wrongfully withheld by the Secretary, and that there was nothing left but the plain ministerial duty imposed upon him to pay the money to Warren.

The Secretary attempts to distinguish the Warren case. He argues that there the widow consented to the payment and did not claim adversely to the petitioner, whereas in the case at bar, the Indian heirs still are pressing their ownership in the funds. Whatever may be the claims of the Indian heirs, however, *they have been adjudged to have no basis in law* by the State and Federal courts in Oklahoma. We are bound, as we have said, to treat the question of ownership as settled. In contemplation of law, therefore, the claim is as uncontested, here, as it was in the Warren case. In the latter case, the Indian widow admitted the contract of assignment to be valid, and we held that the Secretary was compelled to pay over the funds. In the instant case, the validity of the contract, although contested, has been upheld by both the State and Federal courts in Oklahoma. We feel that this places it at least in a position of parity with the contract upon which we allowed mandamus in the Warren case.

The Secretary would avoid the conclusive effects of res judicata by asserting that he was not a party to the proceedings before the District Court of the United States for the Eastern District of Oklahoma. The present action for mandamus, however, is not predicated upon the theory that the proceedings in the Federal courts of Oklahoma resulted in a judgment against the Secretary, either personally or in his official capacity, but rather upon the sound assumption that certain issues as to the funds in question were there conclusively determined as against the United States, the Indian heirs, and all other interested parties, leaving nothing but a mere ministerial duty in the Secretary to pay over those funds to the owner as determined.

Furthermore, we can conceive of no reason why the Indian heirs are necessary parties in the instant case when they were not so considered in the Warren case, unless they did not have their day in the United States District Court in Oklahoma. The appellee has pointed to convincing evidence that the heirs were represented in that proceeding. The amended bill of complaint filed in the United States District Court in Oklahoma by the United States shows that the suit was undertaken by it in behalf of the Indian heirs: "Comes now the plaintiff, The United States of America * * * at the request of the

9 1934, 64 App.D.C. 27, 73 F.2d 844.

Secretary of the Interior of the United States, *and for and in behalf of its Indian wards, Sezzarine Lewis, an adult, and Kelsey Samuel, Gardner Samuel, Aaron Nelson Samuel, and Ozella Samuel, minors,* all of whom are fullblood Choctaw Indian citizens. \* \* \* " [Italics supplied.]

One W. F. Semple, of Tulsa, Oklahoma, entered an appearance in the cause as "Attorney for defendants Gezarine Lewis, Kelsey Samuels, Gardner Samuels, Aaron Nelson Samuels, Ozella Samuels." [10] The decree of the United States District Court in Oklahoma reads in part: "It is Therefore Ordered \* \* \* that the plaintiff, United States of America, recover nothing herein in its favor of for and on behalf of Sezzarine Lewis, an adult, and Wesley [sic] Samuel, Gardner Samuel, Aaron Nelson Samuel and Ozella Samuel, minors \* \* \*."

Finally, on the notice of appeal by the United States from the decree of that court to the United States Circuit Court of Appeals for the Tenth Circuit there is signed, among others, the name W. F. Semple, "Attorney for the Restricted Indian Heirs at Law of Nellie Stetchi [sic], deceased. \* \* \*"

■ The remaining contention of the Secretary concerns the amount of interest awarded by the District Court. The funds held by the Secretary may be divided into two categories: (1) the funds adjudged to belong to the appellee, and (2) the funds belonging to the Indian heirs. Presumably, any interest paid to the appellee by the Secretary would be from the funds in the latter category. On January 27, 1933, however, Congress stepped in by passing an Act which restricted all funds in the hands of the Secretary belonging to the Indian heirs.[11] The Secretary contends that this Act has the effect of barring the use of the funds in the second category to meet the interest payments which may be owing to the appellee after January 27, 1933. The application of this argument for purposes of contesting the awards of the principal sums of $36,675.16 and $1,849.84, and the award of interest at six percent per annum as to the former, is concluded by the decision of the United States District Court in Oklahoma under principles of res judicata. We may only consider, therefore, how the Act of 1933 affects the award of six percent interest on the $1,849.84 principal, attached for the first time by the District Court here. The appellee contends that it was not necessary that the United States District Court in Oklahoma specify interest as to the smaller award; that interest at six percent per annum attached thereto by operation of law. In support of this proposition, he cites the Federal statute[12] which fixes an interest rate in civil cases in Federal district courts equal to that allowed by law in the courts of the State in which the Federal court is sitting. The Oklahoma statute[13] fixes an interest rate of six percent on judgments of this character when no other rate is provided.

■ We feel that there is a short answer to this contention. It is true that a right to forty percent of the royalties accruing after January 1, 1928, was awarded by the District Court of Carter County, Oklahoma, on January 16, 1928, *but no judgment was acquired upon this right* until more than ten years later, on September 19, 1938, the date of the judgment of the United States District Court in Oklahoma, when the debt based upon that claim, as accrued to that date, was determined to be $1,849.84. In the interim, however, Congress had restricted the funds in the hands of the Secretary belonging to the Indian heirs. This, we feel, precludes the appellee from deriving further interest benefits from that fund, which, in our view, should not be used to provide interest upon a judgment rendered against the Indian heirs *after* the passage of an Act restricting its use.

The Secretary is ordered to pay the appellee, Ledbetter, as trustee, the sum of $36,675.16, with interest at six per cent per annum from August 13, 1931, until paid, out of the homestead funds in his hands properly available for this purpose. The Secretary is further ordered to pay the appellee, as trustee, the sum of $1,849.84. No interest is allowed upon the latter sum.

Judgment modified and, as modified, affirmed.

---

[10] The names of the defendants are obviously misspelled.

[11] 47 Stat. 777, c. 23.

[12] Rev.Stat. § 966 (1842), 28 U.S.C.A. § 811.

[13] Statutes of Oklahoma (1931) § 9526, 15 O.S.1941, § 274.