**Terence IRANI, Appellant,**

**v.**

**DISTRICT OF COLUMBIA, Appellee.**

**No. 5276.**

District of Columbia Court of Appeals.

Argued Nov. 3, 1970.

Decided Jan. 27, 1971.

William E. McDaniels, Washington, D. C., for appellant.

Leo N. Gorman, Asst. Corp. Counsel, with whom Hubert B. Pair, Acting Corp. Counsel at the time the brief was filed, and Richard W. Barton, Asst. Corp. Counsel, were on the brief, for appellee.

Before KELLY, FICKLING and NEBEKER, Associate Judges.

PER CURIAM:

This is an appeal from denial of a motion to order an arrest record expunged. Irani, a graduate student with a security clearance due to federal employment, was arrested on February 19, 1970, for parading without a permit. On February 24, 1970, the District of Columbia determined not to prosecute "because of lack of evidence." Irani then requested that the trial court order the records of the arrest be expunged.[1] A hearing was held on the motion to expunge and by order dated March 27, 1970, the relief was denied.[2]

Factually, Irani established without contravention that he was arrested in connection with a civil disturbance at which he was innocently and unavoidably present, having just left a canceled class at a local university where the disturbance was in process. The reasons given for denying the motion were insufficiency of the facts to qualify as "unusual facts" under In re Alexander, D.C.App., 259 A.2d 592 (1969), and that there was no "ruling by the D.C. Court of Appeals that a dismissal * * * for lack of evidence is of itself a proper ground to order expungement of an arrest

---

1. Morrow v. District of Columbia, 135 U.S.App.D.C. 160, 417 F.2d 728 (1969).

2. The motion embodied a request to order destruction of all photographs and fingerprint records relating to Irani's arrest.

Also requested was an order enjoining official or private dissemination of the arrest records, and compelling disclosure whether and to whom such dissemination had already been made.

record. \* \* \*" We reverse and remand for an exercise of judgment by the trial court as to the form of relief which it may deem appropriate.

The argument made by the District of Columbia for the first time on appeal, that the trial court lacked jurisdiction to consider the motion, is not well taken. It urges that since no case in the form of a prosecution was brought before the court there is no case in which to exercise this special ancillary power.

■ Whether there is formal subject matter jurisdiction in the nature of a docketed case over a subsequent prosecution need not be the exclusive basis for an order limiting use of an arrest record. In the District of Columbia, jurisdiction of the trial court over the person arrested is provided by D.C.Code 1967, § 23–610. That provision allows police officers to be designated to act as clerk of the court to accept bail or collateral when the court is not open and the clerk accessible. In fact, Irani posted collateral with such court official at the police station after he was charged on police records by the arresting officer. *See also* Fed.R.Crim.P. 5. What is apparent is that jurisdiction over the subject matter of the arrest is conferred by this provision. Therefore, consistent with the holding in Morrow v. District of Columbia, 135 U.S.App.D.C. 160, 417 F.2d 728 (1969), there is a case relating to the arrest before the court out of which it might act on a motion to limit use of the arrest record. It is recognized that *Morrow* held that the trial court "does have the power to issue an order regarding the arrest record in a criminal case which has been before the court."[3] We do not read that holding as dictating the outer limit of ancillary jurisdiction to treat the question of limiting use of arrest records, thus leaving persons like Irani to their remedy in the United States District Court. *E.g.,* Menard v. Mitchell, 430 F.2d 486 (D.C.Cir., 1970).

■ We now reach the question whether it was legally correct to deny the relief sought. It is noted that the trial court denied the requested relief because of the absence of an appellate holding that a decision not to prosecute "for lack of evidence" is sufficient reason "to qualify as 'unusual facts' " within our holding in In re Alexander, *supra.* But more appears on this record, however, than a mere determination by the prosecution that it lacked enough evidence for conviction. Irani did just as we contemplated in In re Alexander, *supra.* He affirmatively established that he was innocently present for legitimate reasons and that his arrest was a mistake. We conclude that such circumstances reveal a "rare case presenting such unusual facts as to justify" some relief. In re Alexander, *supra,* 259 A.2d at 593. Accordingly, we hold that where one arrested for an offense successfully makes an affirmative demonstration negating factual guilt, it is error to deny relief outright.

Reversed and remanded.

NEBEKER, Associate Judge (concurring):

While I concur in the result I think it appropriate to discuss problems not heretofore illuminated in this relatively new area of local case law. Numerous cases have arisen here recently in diverse circumstances which to me warrant departure from the usually wise practice of avoidance of issues which do not require decision. Since my colleagues do not think the court should discuss these issues it is fair to say that these views are not rejected as a matter of law or as being contrary to the meager precedent in this field of law.

In this case neither the parties nor the trial judge appears to have considered whether alternatives to outright expungement are available and appropriate. Moreover, the realistic nature of an order of expungement has not been recognized. In-

---

3. Morrow v. District of Columbia, *supra* note 1, 135 U.S.App.D.C. at 173, 417 F.2d at 741.

deed, the opinion of the court might lead a reader to believe that, being a case of unusual circumstances, this court favors expungement rather than some lesser form of relief. I do not read In re Alexander, D. C.App., 259 A.2d 592 (1969), as so limiting the nature of relief in these unusual cases. Nor do I believe we should leave unclear and confused the nature of such ancillary power to limit use of arrest records as exercise of such power relates to other officials not properly subject to the mandate of the court.

Irani was arrested by mistake. He now asks that this historical fact be erased. He includes in that request the physical destruction of all records along with photographs and fingerprints and that he be supplied the names of other officials who may now know of the event, presumably in order that he might seek similar relief against them. Certainly, neither this court nor any other court can order that the arrest did not occur. The fact has occurred and no system of law, possessed of integrity, can truthfully deny that it happened. Numerous examples will demonstrate this: Can he deny the arrest if properly asked, in official government inquiry, in face of 18 U.S.C. § 1001 (1964) (false statement), or 18 U.S.C. § 1621 (1964), and D.C. Code 1967, § 22–2501 (perjury)? Can he or the arresting officer truthfully deny the arrest if properly asked about it in future litigation?[1] Indeed, it is extremely doubtful whether Irani can be given license by the trial court or by this court to deny that he was once arrested if by law he is required to answer the inquiry truthfully. Must fingerprints taken after such an arrest never be used, even for identification in the event of an untimely death or for other noncriminal public purposes? In short, there are many legitimate and practical reasons, consistent with the public interest, why the trial court may wish not to undertake to erase an historical fact or even give the appearance of doing so.

Accordingly, it is well simply to recognize that as a practical matter an order of expungement itself has outer limits of efficacy. Such an order, in the absence of a specific statutory directive, ordinarily is thought to encompass elimination of the record of arrest from all public files and most files of officials properly before the court unless extraordinary reasons are advanced for permitting a limited nonpublic retention of a record of the historical fact. Menard v. Mitchell, 430 F.2d 486, 494–495 (D.C.Cir., 1970), recognized some of the considerations militating against judicial intrusion into this vital public function.[2]

In this connection it is appropriate to take note of D.C. Code 1967, § 4–140(a) (Supp. III, 1970). That provision commands that certain "detention shall not be recorded as an arrest in any official record." It is obvious from the context and legislative history of that statute that it applies only where police make an arrest but determine that *they* will release the person without making a criminal charge against him in *their* records. See H.R. Rep. No. 387, 90th Cong., 1st Sess. 25 (1967); S.Rep. No. 912, 90th Cong., 1st Sess. 17–18 (1967). Indeed, according to the latter source, this provision

"does not mean, however, that no record is to be kept of the event. On the contrary, the committee intends that the police department or other law enforcement agency, under appropriate regulations, will keep records identifying the time and circumstances of each arrest which culminates in a release without

---

1. *E. g.*, Michelson v. United States, 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948).

2. Of course there are other recognized instances in which a fact will be legally ignored in lieu of attempted expunge-ment; *e. g.*, Youth Correction Act offenders under 18 U.S.C. § 5021 (1964), where an order setting aside the conviction is entered on official records; executive pardon by reason of innocence; and the declared annulment of a marriage pursuant to D.C.Code 1967, § 11–1141.

charge, including the identity of the person involved."

That statute does not control in this case since the police elected to charge Irani with an offense on their records. It is significant, however, since it is the only legislation dealing with restricted use of arrest records in the District of Columbia,[3] and it is highly suggestive that Congress does not, even in cases where a statute applies, favor general expungement orders.

As reflected from Morrow v. District of Columbia, 135 U.S.App.D.C. 160, 175, 417 F.2d 728, 743 (1969), we and the trial court are free to "adopt a flexible individual case approach" to requests of this kind. Accordingly, it is my view that the trial judge, on remand, is free to consider whether some form of relief short of expungement, whatever that term means, is appropriate; that is, whether the order entered is "agreeable to the usages and principles of law." 28 U.S.C. § 1651(a) (1964). Such order, of course, must relate to the use of "ancillary", not presumed omnificent, power of the court.[4]

In that connection, the trial court may consider whether an order directing complete or limited expungement is appropriate or whether to require the Metropolitan Police Department to amend its records also to reflect that the court has determined that Irani established his complete lack of culpability and has affirmatively shown factual innocence regarding the incident. Of course, that department could also be required to forward such information to any other agency possessing a record of this arrest, such as the Federal Bureau of Investigation. In that way, wherever a record of the arrest is kept so also will be the fact that Irani was by the court declared the innocent victim of a mistake. If in this case it is discovered that the Metropolitan Police Department has communicated the fact of Irani's arrest to other federal agencies, the trial court may well consider directing that department to request recall of such records. In this way, problems of jurisdiction over other officials in the performance of their duties will be avoided and removal of the case to the United States District Court will not become a distinct possibility. *See* 28 U.S.C. § 1441 et seq. (1964). Of course, Irani would have the advantage of offering this adjudication whenever he may be required to disclose his arrest. If deemed appropriate another hearing could be held at which the interests of the police department and Irani could be made of record in relation to any desired alternative form of disposition.

---

3. *See also* the so-called "Duncan Report" referred to in In re Alexander, D.C.App., 259 A.2d 592 (1969).

4. I do not equate this case to United States v. McLeod, 385 F.2d 734 (5th Cir., 1967), dealing with a calculated abuse of police power. But it is nonetheless noted that even in that case the court applied a broad statutory civil rights provision in ordering expungement.