Benjamin McLane SPOCK et al.,
Appellants,

v.

DISTRICT OF COLUMBIA, Appellee.

No. 5860.

District of Columbia Court of Appeals.

Argued Sept. 22, 1971.

Decided Oct. 20, 1971.

Stephen C. Rogers, Washington, D. C., with whom William H. Allen, Washington, D. C., was on the brief, for appellants. Ralph J. Temple, Washington, D. C., American Civil Liberties Union Fund, was also on the brief for appellants. R. Raymond Twohig, Jr., Washington, D. C., entered an appearance for appellants.

Leo N. Gorman, Asst. Corp. Counsel, with whom C. Francis Murphy, Corp.

Counsel, and Richard W. Barton, Asst. Corp. Counsel, were on the brief, for appellee.

Before KERN, NEBEKER and REILLY, Associate Judges.

NEBEKER, Associate Judge:

These 75 appeals present the question whether, and to what extent, the courts of the District of Columbia have power to order expungement of the arrest record of a defendant who asserts mistaken arrest and exoneration. Necessarily included in that question is the availability of an order affording some relief by preserving the arrest record but in such factual completeness that its ordinarily feared consequences, both to the person arrested [1] and the government or its agent,[2] are eliminated. The precise factual setting for all the cases is not the same. One common factor, however, reveals the purpose for consolidation of them by the trial court. The arrests arose out of mass gatherings of people at different places in early May, 1970. To some, the congregations amounted to so-called demonstrations in exercise of protest rights. Another common factor is an assertion by each appellant of factual innocence of objective wrongdoing.

The arrests were made, as appellants characterize them, on "minor charges, principally disorderly conduct". Six appellants were tried and acquitted. Thereafter, those who had also been charged by informations were relieved therefrom by entry of a *nolle prosequi*. As to the others, the prosecution decided not to file an information and, where appropriate, posted collateral was refunded.

Thereafter, almost identical motions were filed by each appellant seeking, in substance, the following relief: (1) prohibition against dissemination of the arrest or other records by any agency of the District of Columbia Government, including

---

1. Menard v. Mitchell, 139 U.S.App.D.C. 113, 117, 430 F.2d 486, 490 (1970).

2. Carter v. Carlson, 144 U.S.App.D.C. ——, 447 F.2d 358 (decided July 23, 1971).

the Metropolitan Police Department; (2) physical destruction of such records;[3] and (3) notification of the foregoing court action to any past recipient of the records. Two appellants (Spauls and Mossman) also requested that the trial court declare

> "that the seizure and subsequent processing of defendant shall be deemed a detention only, and not an arrest and, if asked if he has been arrested on any employment or financial application, defendant shall be entitled to answer in the negative with respect to this detention."

Some of the motions were supported by affidavits or other papers explaining the circumstances of the arrests.

The trial court denied the relief sought on the basis that it lacked power, in the absence of specific legislation, to take the requested action. The denials were without prejudice to requesting modified relief if the request was supported by an affidavit revealing the facts of the arrest and "the reason for the disposition made by the prosecutor." The purpose of the renewed motions was with a view to relief by way of "an appropriate entry [being] made in the court and law enforcement agency records regarding the ultimate disposition of these charges." In denying the instant motions, the trial court appeared, in part, to be following our decision and the concurring opinion in Irani v. District of Columbia, D.C.App., 272 A.2d 849 (1971). Since we remand these cases for further proceedings, it is necessary to decide several questions raised by the order on appeal and by the various kinds of relief sought. In so doing, it is appropriate to more fully set forth the law in this jurisdiction respecting so-called arrest record "expungement" motions.

We face, at the outset, the trial court's holding that no power exists to grant the relief sought. The full text of the order reveals that the trial court appears to have considered that expungement was the exclusive remedy requested. The order states that appellants

> "requested the court to order, in essence, that all records of the arrest be gathered and destroyed and for all practical purposes, to rule that the arrest never took place."

Since, as already noted, limitation on dissemination of the police records, and notification of court action on the motions to any recipient previously furnished the records were also sought, it is necessary to consider whether the trial court could properly grant that or related relief. It is also necessary to consider the adequacy of requiring entry of the ultimate disposition on all records and of conditioning such relief on a factual showing regarding the arrest and the reasons for the exercise of prosecutorial discretion.

### Power to Order Expungement of Arrest Records

In Morrow v. District of Columbia,[4] the court, in a "limited" holding, ruled that the Court of General Sessions had "power to issue an order regarding [an] arrest record in a criminal case which [had] been before the court."[5] This court has also held that where collateral has been posted, but no information later filed, the trial court has power to grant "some relief" to one seeking a limitation on the use of arrest records. Irani v. District of Columbia, *supra*. Although Menard v. Mitchell, 139 U.S.App.D.C. 113, 430 F.2d 486 (1970), treated the general problem of limiting arrest records, that decision related to an

---

3. " * * * Appellants recognize that the records of their arrests in precinct arrest books would not have been involved in the order, had their motions been granted. *See* Morrow v. District of Columbia, 135 U.S.App.D.C. 160, 173–174, 417 F.

2d 728, 741–742 (1969)." [Brief for Appellants at 5, n. 1.]

4. 135 U.S.App.D.C. 160, 173, 417 F.2d 728, 741 (1969).

5. *Id.*

F.B.I. record of an arrest by Los Angeles police and in no way dealt with the power of local courts to order expungement of local police records under applicable statutes. In short, it can be said that the question of power to order outright expungement has not been squarely met in this jurisdiction.

To be sure, we spoke in In re Alexander, D.C.App., 259 A.2d 592 (1969), of unusual facts which might justify ordering a particular arrest record completely expunged. Such was not a holding since this court decided the case without necessarily reaching the question of judicial power to order complete expungement. We simply held on the facts presented that a lesser form of relief, administrative in nature, was sufficient. Likewise, the holding in Irani v. District of Columbia, *supra,* is no more than that an uncontroverted affirmative showing of factual innocence of objective wrongdoing is sufficient for some relief. The case was remanded for the trial judge to consider in the first instance the appropriate available relief. It must be recognized, however, that the decision in *Irani* contemplated the difference between an affirmative showing of no culpability on the one hand, and a verdict of not guilty by the reasonable doubt standard, or an unresolved question as to guilt due to lack of prosecution of the case, on the other.

The requests for complete expungement in these cases are in terms of destruction "so that no record of the arrest or of the fact that a record existed shall remain." Appellants expressly do not request destruction of court records. In their brief they also concede, consistent with Morrow v. District of Columbia, *supra,* 135 U.S. App.D.C. at 173–174, 417 F.2d at 741–742, that destruction of the entry in the arrest book could not have been ordered. *See*

note 3, *supra.* In that case the United States Court of Appeals recognized that D.C.Code 1967, § 4–134(4), requires arrest books to be publicly maintained so that no arrest can be secret. Thus, as to physical destruction, the motions relate to all other records including photographs and fingerprints.

▮▮▮ In deciding if complete expungement is properly within the scope of ancillary equity power of a court, or for that matter within general equity jurisdiction, the first question to be answered is whether the law requires maintenance of the relevant records. In the District of Columbia there is such a requirement. D.C.Code 1967, § 4–137 provides:

> "All records of the Metropolitan Police force shall be preserved, except that the Board of Commissioners, upon recommendation of the major and superintendent of police, may cause records which it considers to be obsolete or of no further value to be destroyed."

This provision obviously relates to records required to be kept under section 4–134, *supra,* and central criminal records required under D.C.Code 1967, § 4–134a,[6] as well as records of receipt and disbursement of money posted by appellants as collateral,[7] photographs and fingerprints. As just observed, the court in *Morrow, supra* at 173–174, 417 F.2d at 741–742, recognized that the statutory requirement that the arrest book records be public precluded their destruction or obliteration. Consistent with that conclusion, it is plain that section 4–137, *supra,* is controlling insofar as destruction of police records is sought. We, therefore, hold that in the absence of specific statutory authority,[8] destruction of records of the Metropolitan Police Department cannot be ordered. This holding is

---

6. These were the records at issue in Morrow v. District of Columbia, *supra* note 3. *Id.* at 173, 417 F.2d at 741.

7. *See* D.C.Code 1967, § 23–610 and Irani v. District of Columbia, D.C.App., 272 A.2d 849 (1971).

8. *E. g.,* the Comprehensive Drug Abuse Control Act of 1970, 21 U.S.C. § 844(b) (2) (1970).

consistent with the requirement of maintaining police records of arrests later treated as detentions under D.C.Code 1967, § 4–140(a) (Supp. IV, 1971) (*see* S.Rep. No. 912, 90th Cong., 1st Sess. 17–18 (1967)), and the concept that secret arrests are "odious to a democratic society"[9] not only during but after detention when the threat of rearrest could be used to prevent disclosure of the detention by the person arrested.

There remains yet another reason why destruction of arrest records, in the absence of specific legislative control, should not be permitted. As was observed in *Morrow:*

"* * * The inquiry might be better directed to the question: what valid law enforcement purposes are served by retaining * * * the arrest record in a particular case?" [*Id.* at 175, 417 F.2d at 743.][10]

Of recent date the United States Court of Appeals for the District of Columbia Circuit has held that an arresting officer, his superiors and the District of Columbia are subject to suit in the United States District Court, both at common law and under 42 U.S.C. § 1983, for damages arising out of asserted police misconduct. *See* Baker v. Washington, D.C. Cir., 448 F.2d 1200 (decided August 11, 1971); Carter v. Carlson, D.C. Cir., 447 F.2d 358 (decided July 23, 1971).[11] Clearly, law enforcement interests are and must be served by preserving records of arrest if for no other reason than to permit a determination whether and how to defend in the event of an action based on asserted police misconduct. Upon destruction of arrest records in such cases the defense would be left at best with faded recollection by the arresting officer of an event lost in memory because of hundreds of subsequent cases.

It may be well to point out in this context that a hearing on a motion regarding content and disposition of arrest records ordinarily would not involve all factual issues which may be presented in an action based on asserted police misconduct. Neither in such a motion, nor in one for amplification of arrest record as discussed, *infra,* should it be necessary to explore such factual questions with a view to establishing facts respecting reasonableness or propriety of police conduct. *See* note 15, *infra.* Such a hearing should not be permitted to become a proceeding where both sides jockey for position with an eye cast to a subsequent tort action.

Rejection of the notion that court-ordered destruction of arrest records is permitted, absent specific legislative guidelines, is consistent with our national concept of open government based on democratic principles. Moreover, Congress in legislating for the seat of government (*see* United States v. Thompson, U.S.App.D.C., (No. 71–1182, decided October 7, 1971), slip op. at 8)), may well have very good reason to want all current records of the police department preserved in order that it might be informed of need for change in its area of responsibility. Indeed, future ability to cope with demonstrations here may well depend upon Congress knowing all available facts (not just total numbers) regarding past arrests just like the ones revealed here. In any event, the hallmark of our system of government calls for the preservation of accurate official records rather than suppression of information.

---

9. Morrow v. District of Columbia, *supra* note 3, at 174, 417 F.2d at 742.

10. Another division of the United States Court of Appeals for the District of Columbia Circuit has also recognized the significance of this inquiry. *See* Sullivan v. Murphy, U.S. Court of Appeals No.

71–1632, interim order dated October 1, 1971.

11. A similar case is pending before this court. Graves v. District of Columbia, D. C. Court of Appeals No. 5086 (filed September 15, 1969).

*Alternatives to Expungement*

■ Consistent with previous decisions discussed, it is clear that some power is vested in the trial court to issue an order respecting the content and dissemination of arrest records. Since the trial court ruled that it lacked power to afford "the relief sought in [these] Motion[s] for Expungement", we conclude it erred to the extent that it denied relief short of outright destruction. Accordingly, the orders are reversed and the cases remanded for further proceedings. In so doing, it is deemed appropriate to set forth some guidelines as to the nature and scope of available relief relating to arrest records as well as the standard for entitlement thereto.

Appellants, in their brief, make repeated reference to the fact that they have been exonerated of wrongdoing. It is on this predicate that they base their claims. However, the standard under Irani v. District of Columbia, *supra,* is not merely a showing of being disburdened, discharged, or freed from a charge.[12] The basis in *Irani* for holding that the appellant was entitled to some relief was that there was an uncontroverted, and thus successful, affirmative demonstration negating culpability. In other words, Irani affirmatively established that he was mistakenly arrested. This standard—not mere exoneration—is the criterion which must be met to entitle an arrested person to an order regarding the content and dissemination of his arrest record.

■ This court has previously held that the so-called "Duncan Report rules"[13] reasonably and adequately protect citizens against misuse of arrest records. In re Alexander, *supra.* The facts underlying the arrest record in that case revealed that the criminal charges were dismissed on the sole ground that the charges were brought by the wrong prosecutive authority. In light of this and because there was no factual basis for considering whether an explanatory entry should be made on the arrest record, this court did not have to consider that possible course. *Irani* makes it clear, however, that when mistaken arrest of a nonculpable citizen occurs the court must consider some form of a protective order in addition to the guarantees available under the "Duncan Report rules". It is the conclusion of this court that in cases where the arrested person affirmatively demonstrates nonculpability, the police records of that arrest, including all forms and copies thereof, just like the court records, should be made to reflect that fact. This holding is consistent with and only a slight expansion (through the exercise of ancillary equity power) of the statutory duty of the police to make note in the central criminal records of the disposition of the case pursuant to section 4–134(a) (2), (3) and (4) *supra.* As to dissemination of such records, the order should also require that the fact of such determination be sent to any recipient, the object of such procedure being to insure that with whatever information is kept about the arrest there will also be included as an integral part of such record the fact that no culpability existed.

■ This conclusion balances both public and private interests. To the extent that considerations of invasion of privacy, due process or equal protection affect private interest,[14] we have held in In re Alexander, *supra,* and reaffirm here that the regulations on dissemination (the Duncan Report, *supra*) presently in force are ade-

---

12. Webster's Third New International Dictionary of the English Language (Unabridged) "exoneration" at 797 (1969).

13. Those rules have not been officially reported but may be found as an appendix to the opinion in *Morrow, supra* note 3, 135 U.S.App.D.C. at 177–178, 417 F.2d at 745–746.

14. Menard v. Mitchell, *supra* note 1, 139 U.S.App.D.C. at 119, 430 F.2d at 492; Morrow v. District of Columbia, *supra* note 3, 135 U.S.App.D.C. at 174, 417 F. 2d at 742. *See also* D.C.Code 1967, § 4–139.

quate. A specific entry declaring lack of culpability will eliminate harmful classification of those persons by effectively distinguishing them from others with sufficient clarity and thoroughness that no one need fear substantial adverse consequences from the retention of the record.

■ As previously observed, the order on review was entered without prejudice to appellants showing, on a renewed motion aimed at lesser relief, (1) the facts surrounding the arrest and (2) the reasons for the disposition by the prosecutor. As to the former, we assume the trial judge was seeking a showing of the kind made in *Irani* and required here. To that extent the order under review was proper. However, it is quite another matter to require appellants to show why the prosecutor made the decision arrived at. The scope of the inquiry is whether there was non-culpability or mistaken arrest. It is not appropriate for a court in this or other contexts to inquire into the exercise of prosecutorial discretion. United States v. Jefferson, D.C.App., 257 A.2d 225 (1969); United States v. Shaw, D.C.App., 226 A.2d 366 (1967). *See contra,* Henderson v. United States, 121 U.S.App.D.C. 277, 349 F.2d 712 (1965) (dissenting opinion); Hutcherson v. United States, 120 U.S.App.D.C. 274, 345 F.2d 964 (1965) (Bazelon, C. J., concurring in part & dissenting in part).

■ Accordingly, on remand those appellants who desire to pursue their cases further need only make such explanatory showing of nonculpability, by affidavit or otherwise, as in their view the facts warrant. Should such showing on a motion for amplification of arrest record be uncontroverted an order as outlined above should be entered on court records and on all law enforcement records reflecting the fact of arrest. Of course, should there be a dispute of fact, a hearing will be required [15] for resolution thereof by a preponderance, not reasonable doubt, standard. We hasten to add for future cases that a motion for amplification of arrest record made prior to disposition of criminal charges would be premature and should not be entertained.

*The Request for Future Absolution by the Court Respecting Inquiries as to the Arrests*

■ Two appellants request court permission to answer in the negative if ever asked on any employment or financial application whether they have been arrested. In light of what we have held herein, it is apparent that relief of this sort is *a fortiori* unavailable. We reject any notion that without specific statutory authority a court could, in perpetuity and under all circumstances, grant immunity from prosecution or afford an absolute defense in the event of prosecution for perjury or filing of a false statement in connection with government-related business protected by those sanctions. Such seems to be one major purpose for this prayer for relief.

■ Another purpose—noncriminal in nature—appears to be aimed at obtaining a civil *ex parte* judgment in the nature of a declaratory judgment affecting future dealings with others. While it may be that the Superior Court has declaratory judgment jurisdiction [16] such authority could hardly be exercised in the context of this litigation and without adherence to the ap-

---

15. In any other litigation arising from such events (*e. g.,* Carter v. Carlson, *supra* note 2) where there is a commonality of parties, the failure to dispute facts on a motion for amplification of arrest records or a decision on controverted facts cannot be said to be res judicata. *See* Wardman-Justice Motors v. Petrie, 59 App.D.C. 262, 39 F.2d 512 (1930) and 46 Am.Jur.2d Judgments § 404 et seq.

16. *See* D.C.Code 1967, § 11–946 (Supp. IV, 1971), which makes the Federal Rules of Civil Procedure, including Rule 57, the Declaratory Judgment Rule, and 28 U.S.C. § 2201 (1970) incorporated therein, applicable to the Superior Court.

plicable statute and rules relating to notice and hearing. Moreover, such a judgment could not affect a subsequent and yet unknown employer or lender dealing with either of these appellants.

Appellants cite no authority in support of their assertion of entitlement to such a decree.[17] That they have been forcibly restrained of their liberty as a result of the encounters in question is an historical fact. No system of law can, with integrity, lend or appear to lend its aid to an unreal denial of the events, particularly as such denials may affect the lawful judgment of other persons who may in the future deal with them. It is one thing to say that the system of law will legally ignore an acknowledged fact and perhaps, pursuant to specific legislation, indulge in a fiction that what was once a conviction or a criminal charge shall no longer be deemed such; but it is quite another to assist in rewriting history at the expense of truth, particularly where, as outlined above, the full truth if effectively recorded can preserve the integrity of the individual as well as the rule of law.[18]

The order is vacated and the cases remanded for further proceedings.

17. The semantic observation of the court in Wheeler v. Goodman, 306 F.Supp. 58, 65 n. 10 (W.D.N.C.1969), that unconstitutional vagrancy arrests of hippies may not have "occurred" but in reality may have amounted to false imprisonment, is hardly sufficient for these appellants to surmount the realistic and jurisdictional obstacles necessary to embroil the courts in such a flight of fancy. [Wheeler was vacated and remanded for reconsideration, 401 U.S. 987, 91 S.Ct. 1219, 28 L.Ed.2d 524 (1971), and reaff'd on rehearing D.C., 330 F.Supp. 1356.]

18. To the extent that any of these appellants may be members of a class independently pursuing a similar remedy in Sullivan v. Murphy, supra note 10, arising from May, 1971 demonstrations (in which counsel on their brief herein also represents the appellants there), we invite their attention to Erie R.R. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Cf. Hilton Hotels Corp. v. Weaver, 117 U.S.App.D.C. 83, 325 F.2d 1010 (1963); and Ickes v. Ledbetter, 77 U.S. App.D.C. 358, 135 F.2d 658 (1943). Moreover, we assume in the light of comity that the sixth "ordered" paragraph of the October 1, 1971, interim order in Sullivan v. Murphy, supra, (relating to an injunction or disseminating record information as to anyone in the class not convicted) is not to be read as restricting the Corporation Counsel and the Metropolitan Police Department from proceeding in these cases on remand and particularly from communicating any court-ordered dispositional notation to a previous or subsequent recipient of the arrest information.