DISTRICT OF COLUMBIA, Appellant,

v.

Warren HUDSON, Appellee.

UNITED STATES, Appellant,

v.

Warren HUDSON, Appellee.

DISTRICT OF COLUMBIA, Appellant,

v.

Michael Wayne JONES, Appellee.

DISTRICT OF COLUMBIA, Appellant,

v.

Bruce James NAUGHTON, Appellee.

DISTRICT OF COLUMBIA, Appellant,

v.

Christopher MATTHEWS, Appellee.

UNITED STATES, Appellant,

v.

Benjamin MACK, a/k/a Becton R. Speight, Appellee (two cases).

Nos. 9312, 9387, 9492, 9545 and 9548 to 9550.

District of Columbia Court of Appeals.

Argued en banc December 4, 1978.*

Decided July 19, 1979.

* This case was originally argued on March 23, 1976, before the en banc court consisting of Judges Reilly, Kelly, Fickling, Kern, Gallagher, Nebeker, Yeagley, Harris and Mack.

176

Richard W. Barton, Deputy Corp. Counsel, Washington, D. C., with whom C. Francis Murphy, Corp. Counsel, Washington, D. C., at the time the original brief was filed, John R. Risher, Jr., Corp. Counsel, Washington, D. C., at the time the supplemental brief was filed, Louis P. Robbins, Acting Corp. Counsel, Washington, D. C., at time of argument, and James N. Dulcan, Asst. Corp. Counsel, Washington D. C., were on briefs, for appellant District of Columbia.

John A. Terry, Asst. U. S. Atty., Washington D. C., with whom Earl J. Silbert, U. S. Atty., Washington, D. C., at the time the brief was filed, James F. McMullin, David R. Addis, Joseph Guerrieri, Jr., Asst. U. S. Attys., Washington, D. C., and H. Lowell Brown, law student (LS No. 847), were on brief, for appellant United States.

Robert Clem, Washington, D. C., appointed by this court, for appellee Hudson.

Sol Rosen, Washington, D. C., appointed by this court, filed a brief on behalf of appellee Jones.

Steffen Graae, Washington, D. C., filed a brief on behalf of appellee Naughton.

David J. Cynamon, Washington, D. C., filed a brief on behalf of appellee Matthews.

David C. Niblack, Washington, D. C., appointed by this court, for appellee Mack. Robert St. John Roper, supervising atty., Washington, D. C., appointed by this court, and Joyce Marie Cram, law student (LS No. 899), were on the brief for appellee Mack. James M. Doyle also filed an appearance for appellee Mack.

Ralph J. Temple, Washington, D. C., on behalf of amicus curiae, American Civil Liberties Union.

Before NEWMAN, Chief Judge, and KELLY, KERN, GALLAGHER, NEBEKER, HARRIS, MACK and FERREN, Associate Judges, and REILLY, Chief Judge, Retired, and YEAGLEY, Associate Judge, Retired.**

** Judge Yeagley was an Associate Judge of this court at the time of oral argument; his status changed to Associate Judge, Retired, on April 20, 1979.

KERN, Associate Judge:

The United States and the District of Columbia variously appeal[1] from orders entered by the trial court in five different cases with one common factor: the appellee in each case was arrested by police for a criminal offense but the government subsequently determined not to prosecute him and he then requested the court to order the record of that arrest expunged from the central files of the Metropolitan Police Department (MPD) and the files of any other law enforcement agencies to whom MPD may have sent such record.

The orders appealed from by the government provide in essence that (1) the United States Attorney, in his capacity as the prosecutor of local offenses within the District of Columbia,[2] and the Corporation Counsel, on behalf of the MPD, shall collect and destroy all records (including fingerprints and photographs) in any way reflecting that appellees were arrested for a criminal offense; (2) the MPD shall (a) notify law enforcement agencies to whom it had previously disseminated information concerning appellees' arrests that all District records relating to these arrests had been expunged, and (b) request law enforcement agencies to return to the MPD all records in their possession relating to these arrests; and (3) the taking into custody of each appellee by police shall be deemed *not* to have been an arrest and each appellee shall *not* be required in the future to state that he was ever arrested on the particular occasion of his seizure by police.

The government objection to the orders entered by the trial court in the five cases is essentially threefold:

First, the orders run afoul of the intent of Congress expressed in D.C. Code 1973, § 4–137, that *only* the Commissioner (the predecessor of the Mayor) is empowered to order MPD records destroyed.[3]

Second, the orders contravene this court's holding in *District of Columbia v. Sophia*, D.C.App., 306 A.2d 652, 654 (1973):

Where the arrest is mistaken and lack of culpability has affirmatively been found, the appropriate remedy is *not* to destroy or seal the record, but to clarify such record by a notation reflecting the fact that no grounds of culpability existed. [Emphasis added.]

Last, the orders are at variance with this court's conclusion in *Spock v. District of Columbia*, D.C.App., 283 A.2d 14, 20, 21 (1971), that "court permission to answer in the negative if ever asked . . . whether they have been arrested . . . is . . . unavailable," on the ground that if such relief were granted it would be "rewriting history at the expense of truth."

The trial court granted the relief now challenged on this appeal to each of the appellees under the following circumstances. In *Hudson*, after appellee had been arrested for murder in the second degree, the Deputy Medical Examiner concluded that the supposed homicide victim had in fact committed suicide. Also, a witness, upon whose accusation the police had made the arrest, recanted and the police received evidence during post-arrest investigation that at the time of the shooting no one had been near the decedent.

In *Matthews*, appellee was arrested because court records reflected that he had not attended traffic school as he had been ordered to do after committing some twenty parking violations. In fact, the records of the court were in error and appellee had attended and completed traffic school.

---

1. The United States is a party only in *Hudson* and *Mack;* the Corporation Counsel has advised that it recedes from the position it formerly took in *Hudson* and *Matthews* that the trial court was *not* empowered to grant *any* of the relief it ordered in those two particular cases.

2. *Morrow v. District of Columbia*, 135 U.S.App. D.C. 160, 176 n. 55, 417 F.2d 728, 744 n. 55 (1969).

3. Section 4–137 provides in pertinent part:

   All records of the Metropolitan Police force shall be preserved, except that the [Commissioner of the District of Columbia], upon recommendation of the . . . superintendent of police, may cause records which it considers to be obsolete or of no further value to be destroyed.

In *Mack,* appellee was arrested for carrying a pistol without a license after his photograph (identified by his cousin) and a pistol (with filed-off serial numbers) were found in an automobile driven by a man who escaped when the auto was stopped. The trial court, without hearing any testimony or reviewing any evidence, noted an Assistant United States Attorney had admitted in open court that appellee was "the wrong man."

In *Naughton,* appellee was arrested for grand larceny and receiving stolen property upon evidence that he had removed a motorcycle with an expired out-of-state tag, long parked by a public curb, and placed it on his neighbor's property. Appellee explained his action as protecting the vehicle for the true owner. The prosecutor decided not to file formal charges "because the defendant [appellee] presented a credible story and the government would be unable to prove the requisite knowledge or intent."

In *Jones,* appellee was arrested for grand larceny from a restaurant, but a nolle prosequi was subsequently filed because the government's witnesses could not be located.

At the outset, we note the purpose generally suggested for law enforcement agencies to maintain arrest records. The "retention of arrest records is justified by their potential future usefulness in helping police prevent crimes and apprehend criminals." Note, 38 *Retention and Dissemination of Arrest Records: Judicial Response,* U.Chi.L. Rev. 850, 854 (1970–71). The notation of arrest made by the arresting officer "memorializes" his "perception connecting the arrested person with a particular crime [and] . . . becomes the basis for a continuing inference by law enforcement officials that there were reasonable grounds at the time of the arrest for associating the arrested person with the crime." *Id.* at 856.

■ More specifically, it has been said that law enforcement officials use records of arrests in the following ways: Police officers will use an arrest record "in subjecting the individual to rearrest on the basis of past arrests and in deciding whether to bring formal charges"; the prosecutor, in deciding the category of the offense to charge a defendant and whether to plea bargain with him, could consider the defendant's past arrests; parole boards, in determining whether to release a defendant under sentence, could consider the arrest records of the potential parolee; and finally, courts might well give some weight to a particular defendant's past arrests in determining the conditions for his release pending trial of a current charge. *Retention and Dissemination of Arrest Records: Judicial Response, supra* at 855. Our reference to the practice of law enforcement officials using arrest records should not be taken as approval of these specific uses,[4] but, absent a direct attack on any particular use to which we have referred, we must assume that arrest records have an appropriate role in law enforcement and proceed in this opinion on that premise.

■ We assess now the potential usefulness to the government itself of the records of the appellees' arrests in these cases. The government concedes,[5] and we agree, that

4. Prior arrests are explicitly recognized as proper for consideration by our court in deciding whether to grant pretrial release and release pending appeal. *Villines v. United States,* D.C.App., 312 A.2d 304 (1973); *Russell v. United States,* 131 U.S.App.D.C. 44, 402 F.2d 185 (1968).

It is uncertain whether arrests, as distinguished from convictions, are a part of the term "prior criminal record" which, according to Super.Ct.Cr.R. 32(b)(2), the trial court may consider in sentencing a defendant, although that term is not expressly defined. Similarly, while it is clear that a parole board may consider an inmate's prior "criminal record,"

*Wyatt v. United States Parole Comm'n,* 571 F.2d 1089 (9th Cir. 1977); *Roach v. Bd. of Pardons and Parole, State of Arkansas,* 503 F.2d 1367 (8th Cir. 1974); *Jones v. Salsbury,* 422 F.2d 1326 (6th Cir.), *cert. denied,* 400 U.S. 836, 91 S.Ct. 73, 27 L.Ed.2d 69 (1970), it is uncertain whether an arrest without a conviction is a part of that "criminal record." *See Jackson v. Shields,* 438 F.Supp. 183, 184 (W.D. Va.1977); *Wyatt v. United States Parole Comm'n, supra.*

5. We recognize that the United States takes exception in *Mack* to the trial court's failure to hear testimony and consider evidence concern-

the notation of Hudson's arrest for murder (when there was no murder), Matthews' arrest for failure to attend traffic school (when in fact he did so attend), and Mack's arrest for carrying a pistol without a license (when he was not the man so carrying the pistol), have no potential usefulness in assisting officials of the criminal justice system or otherwise helping prevention of crime and apprehension of offenders in the District. Clearly, in each of these three cases, the officer's perception connecting the particular appellee with the commission of a specific crime, which perception has been memorialized in the record of his arrest, was later found to have been incorrect. Thus, there is no basis to maintain the records of these arrests because it would be quite incorrect to draw any "continuing inference" that appellees Hudson, Matthews and Mack were connected with the commission of a crime when arrested upon these particular occasions.

■ The cases of *Naughton* and *Jones* are on a different footing; they do *not* contain concessions by the government that the records of their arrests were in error by reason of the post-arrest discovery that no crime had been committed or they had not committed it. In passing, we emphasize to the government, whose agents have arrested the citizen, that it has a special responsibility at the hearing of that citizen's motion for relief from the continuing maintenance of the record of his arrest to advise the court promptly of the full results of its post-arrest investigation. We are of opin-

ion that, in the absence of such governmental concession, the movant in the trial court for equitable relief bears the burden of proving that the notation of arrest, which memorializes the arresting officer's perception connecting him with a particular crime, is erroneous.[6]

Specifically, the movant must prove that the arrest was based on mistaken identity or that no crime had in fact been committed at the time of his arrest. The degree of proof that no crime was committed or the movant did not commit it must be by clear and convincing evidence—"a degree of persuasion much higher than 'mere preponderance of the evidence' but still somewhat less than . . . 'beyond a reasonable doubt.'" *Collins Securities Corp. v. SEC*, 183 U.S.App.D.C. 301, 305, 562 F.2d 820, 824 (1977).[7] Such a degree of proof seems appropriate for a proceeding in equity where the court must balance the interest of the individual in having an incorrect record corrected with the interest of society in maintaining records of events, *viz.*, arrests, that would assist law enforcement officials to apprehend criminals in the future.

The record reflects in *Naughton* that appellee explained he moved the motorcycle to clear the curb and left the machine with a neighbor for safekeeping; and, the government frankly evaluated appellee's account of his action as "credible." While this may have been clear and convincing evidence that Naughton lacked the requisite intent for his removal of the motorcycle to have constituted grand larceny, the trial court at

ing the facts of the post-arrest investigation. While we do not approve of the peremptory manner in which the court handled the case, we are of opinion that the government is bound by its concession to the trial judge in open court that appellee is "the wrong man" and cannot on this appeal avoid this concession.

6. Amicus suggests that in all cases of arrest which do *not* result ultimately in a conviction, the government has the burden of showing that the arrestee committed the crime for which he was arrested or else the notation of his arrest should be obliterated. Amicus points to the presumption of innocence which clothes all criminal defendants and argues that this should place the burden of upholding the validity of the arrest record on the government in the case

of an acquittal. Given the use of arrest records, as such, in connection with law enforcement, *see* text at note 4, *supra*, we conclude the presumption of innocence in a criminal prosecution has no place in a civil proceeding in which the movant is seeking equitable relief and, therefore, cannot be used to shift the burden of proof from the movant to the government. *See Bell v. Wolfish*, —— U.S. ——, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).

7. Clear and convincing evidence should "produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." *In re Estate of Soeder*, 7 Ohio App.2d 271, 220 N.E.2d 547 (1966).

the time it determined the motion for relief did not apply the "clear and convincing" test. Accordingly, the issue of whether the notation of Naughton's arrest now maintained in MPD files is a mistaken record "of no further value" should be reconsidered by the trial court on remand.[8]

■ As to appellee Jones, we are persuaded upon the record, as a matter of law, that he failed to bear his burden of proving by clear and convincing evidence that the incident for which he was arrested did not constitute a crime or that someone other than he had committed the unlawful taking from the restaurant. The only circumstance presented in support of his request for relief from the continuing maintenance of his arrest record was that the prosecution could not locate its witnesses. Such circumstance did not demonstrate that the arresting officer's perception connecting Jones with a crime had been incorrect and that the memorialization of the officer's perception in the form of appellee's record of arrest should be corrected.

We consider now the propriety of the remedy ordered by the trial court in response to appellee's showing, *viz.*, ordering all the records of their arrests maintained by the MPD and located elsewhere in the law enforcement community to be collected and destroyed by the prosecution.[9] This court some time ago recognized the availability of equitable relief to those arrested by mistake and suggested that expungement might be appropriate "in rare cases presenting . . . unusual facts." *In re Alexander*, D.C.App., 259 A.2d 592, 593 (1969). *See Morrow v. District of Columbia, supra* (trial court empowered to prohibit dissemination of arrest records). However, we later concluded in *Sophia, supra*,

and *Spock, supra*, that it was not appropriate for the trial court to order the arrest records maintained by MPD to be destroyed. Rather, we stated that equity required the trial court to order only amplification of arrest records; that is, the trial court should order MPD "to insure that with whatever information is kept about the arrest there will also be included as an integral part of such record the fact that no culpability existed." *Spock, supra* 283 A.2d at 19.

The government now urges this court, en banc, to declare amplification to be the *sole* remedy for a person arrested but later not prosecuted. On the other hand, we are urged to declare that the appropriate equitable remedy in such case is to order destruction of all records of arrest, as did the trial court in the instant cases, thereby avoiding even the possibility that any such record might, by mistake, not be amplified and thereby permit in the future an erroneous inference of past criminality on the part of the arrestee.

Upon further reflection and in light of the additional argument presented to this court sitting en banc, we are not persuaded that an order to the police either to destroy arrest records, *viz.*, expungement, or to disseminate explanatory material concerning the arrest records wherever they exist, *viz.*, amplification, is the most appropriate remedy.

We so conclude as to the proposed remedy of expungement because we do not believe that the court should order the Mayor's agent to destroy MPD records. Were we to do so, the Judiciary would be intruding significantly into the recordkeeping process of the Executive in the face of an explicit

---

8. In *Spock, supra*, we required the movant for equitable relief to demonstrate "nonculpability" by a preponderance of the evidence. Henceforth, the "clear and convincing" test shall be employed by the trial court in determining whether the *arrest was for a crime that in fact was not committed by a person who* seeks relief from the record of that arrest.

9. The trial court and the parties to this appeal are in agreement that the notations of appel-

lees' arrests maintained under authority of D.C. Code 1973, § 4–134 and subject to public inspection by the terms of D.C.Code 1973, § 4–135 are *not* a source of potential harm. This is apparently because of the practical difficulty in sifting through these voluminous records maintained in chronological order. Accordingly, appellees did not seek and the trial court did not grant any relief concerning the notations of their arrests in the precinct books.

command from the Legislature. That command directs the Mayor, upon recommendation of the Chief of MPD, to order the destruction of police records when *he* deems them to be "obsolete or of no further value." While it may be accurate to characterize this section of the statute as a "local housekeeping measure," *Sullivan v. Murphy*, 156 U.S.App.D.C. 28, 62, 478 F.2d 938, 972, *cert. denied*, 414 U.S. 880, 94 S.Ct. 162, 38 L.Ed.2d 125 (1973), the Congress explicitly has directed the Mayor, not the court, to keep his own house and to destroy records only when in *his* judgment they are of no further value. The delicate balance of comity which must be maintained among the three branches of government persuades us that the court should not exercise its equitable jurisdiction and direct the destruction of MPD records now maintained under express command of Congress and destructible only at the Mayor's discretion. Particularly is this so when there is an alternative "remedy reasonably equivalent to expungement," *Sullivan v. Murphy, supra*, 156 U.S.App.D.C. at 63, 478 F.2d 938, which we will detail subsequently in this opinion.

So, too, the remedy of amplification urged upon us requires the MPD to track down a useless record of arrest, wherever it exists, and layer it with a notation in the form of yet another record explaining why the record of arrest is of no value. We are not persuaded that either equity or administrative efficiency is best served by having two records extant instead of one, especially when the first is of no use. The experience of appellee Matthews with the court's own records dramatically demonstrates the risk of error inherent in an amplification process and suggests persuasively why it is not the most satisfactory equitable remedy under the circumstances.

■ In our view the most appropriate remedy that achieves protection of individual rights and also serves the maintenance of a proper separation of powers among the branches of the government is the following procedure: When the movant for equitable relief from the maintenance of a record of arrest shows by clear and convincing evidence that he did not commit the crime for which he was arrested or no crime at all had been at that time committed, the trial court shall order the prosecutor to collect all records reflecting the arrest (except the precinct book, *see* note 9, *supra*), wherever located, and to file them with the court. If the court subsequently is satisfied by an appropriate affidavit that all extant records relating to that arrest are before it, the court should then seal such records. The records of the arrest of the movant would remain under seal thereafter in a special file, appropriately and securely indexed in order to protect its confidentiality, subject to being opened on further order of the court only upon a showing of compelling need, such as other civil litigation concerning the particular arrest or the discovery of additional evidence concerning the occurrence of that arrest.

We consider now the validity of the orders entered by the trial court in these cases insofar as they (a) deemed the seizures and detentions of appellees as *not* being arrests, and (b) authorized appellees in the future *not* to acknowledge that these particular seizures and detentions had been arrests. We first note that both as a matter of fact and law the events in the case of each appellee constituted an arrest necessitating a trip to the stationhouse in contradistinction to a brief detention on the street while further investigation was carried out or additional questioning was conducted. While the official suppression of the fact of an arrest is not unknown in our system of justice, *e. g.*, the Comprehensive Drug Abuse Control Act of 1970, 21 U.S.C. § 844(b)(2) (1970), such suppression by fiat is extraordinary and the result of a legislative decision to spare citizens, under certain specified circumstances, from the adverse consequences of their own prior acts.

We can well appreciate why appellees seek such suppression in these cases. They fear that disclosure in the future of their arrests will create an adverse reaction on the part of a person or agency from whom they might someday seek employment, licensing, educational opportunity or similar

benefits. Appellees, and apparently also the trial court here, believed that their assertion in the future of innocence and explanation that these arrests had been erroneous would not be persuasive, and that the revelation of their arrests *alone* would cause them to be denied the business or educational opportunities they might seek.[10] It is for this reason that the trial court's order enables appellees to suppress the fact of their arrests so as to keep all others ignorant of this fact and not afford even an opportunity for these others to draw any adverse inference from the past arrest.

We are of opinion that an official, and hence authoritative, explanation of the erroneous basis for the arrest could eliminate the risk of an adverse inference that might be drawn in the future by third persons upon learning the fact of appellees' arrests in the past. Specifically, the trial court's order, which would place the arrest records under seal upon an appropriate showing by the movant as detailed above, should summarize in its findings of fact the events preceding and following the arrests, including of course the results of the government's investigation. The court's conclusion of law in its order should then state that the movant was innocent of the crime for which he had been arrested because either no crime was committed or someone else committed it.

This kind of conclusion of law by the trial court, resting upon findings of fact detailing the circumstances of the arrest and then the post-arrest occurrences which resulted in the determination to drop further criminal proceedings, would provide a full as well as official explanation to third persons who might in the future inquire concerning the existence of a prior arrest. In the instant cases, for example, appellees Hudson, Matthews and Mack would be enabled to answer a question, if ever asked of them in the future about a past arrest, with the most authoritative and comprehensive answer possible, *viz.*, the court's findings and conclusions in its properly authenticated order.

To summarize, when a motion for equitable relief from maintaining a record of arrest that did not result in a prosecution is timely made, the movant shall be entitled to relief if he can show by clear and convincing evidence that the crime for which he was arrested did not occur or that he did not commit it. The trial court may grant relief by an order (1) directing the United States Attorney or Corporation Counsel to collect all records of the arrest (a) in the files of MPD and (b) disseminated by MPD to other law enforcement agencies, and (2) sealing these records in a properly indexed and secure file upon representation in proper form to the court that the records so collected are complete. Thereafter, the file may be opened only upon further order of the court in the event of a showing of compelling need.

The trial court should, in support of its order and as a part of the same document, make findings of fact detailing the basic facts of the arrest and post-arrest occurrences and enter, as appropriate under these findings, a conclusion of law either that movant did not commit the crime or no crime was committed. The order, containing the findings of fact and the conclusions of law, may then be properly authenticated and given to each movant for his future use.

We continue to be concerned with the question of how arrest records that the trial court orders sealed are to be secured and indexed so that they are not available to law enforcement personnel, prosecuting authorities, court personnel, other government

---

10. There has been a demonstrated adverse impact on the opportunity to obtain employment and numerous categories of licenses when arrest records are disseminated outside the law enforcement system. *See* "Report of the Committee to Investigate the Effect of Police Arrest Records of Employment Opportunities in the District of Columbia" (1967) ("Duncan Report"). On the basis of the Duncan Report, the District of Columbia Board of Commissioners adopted the so-called "Duncan Ordinance," effective in early 1968, generally precluding dissemination of arrest records by the police outside the criminal justice system. *See Morrow v. District of Columbia, supra,* 135 U.S.App. D.C. at 177–78, 417 F.2d at 745–46 (Appendix).

officials and employees, or the general public, except upon a showing of compelling need. Necessarily, an index of the sealed records will be required, and yet access to that index and the records so indexed must be strictly limited, in order to assure that any equitable relief granted pursuant to this opinion cannot be undermined.

We note that the trial court itself maintains a case file of an individual who is arrested but subsequently not prosecuted and that such a file is apparently a part of the court records open to public inspection. It may be, therefore, that the equitable relief afforded an individual citizen, mistakenly arrested, from maintenance of the fact of that erroneous arrest in the MPD central files would be negated or at least considerably diminished, by reason of the court maintaining a public record of that same arrest in its file. Accordingly, we request the parties, pursuant to the order accompanying this opinion, to submit to this court within 90 days a proposed plan for carrying out the sealing of arrest records in MPD and court files determined by the trial court to be of no value to law enforcement. We urge that to the extent possible this submission be a joint product of appellants, appellees, and amicus, and that it take into account the present technical capabilities of the law enforcement agencies and the court system as well. Such a submission should also consider the experience of other jurisdictions to the extent that they have used sealing as a method of limiting access to arrest records.

Once we have received the proposed plan from the parties and have then reviewed the matter, we shall enter a final order reversing the cases on appeal and remanding for further proceedings.

*So ordered.*

1. If I read the majority opinion correctly, appellee Jones has been written out of the case as not being entitled to relief.

2. *See, e. g., United States v. Hudson,* D.C.Super.Ct. (Cr. No. 49590–74, Feb. 19, 1975, Memorandum Opinion at 24 n. 33), 103 Wash.D.L. Rptr. 377 (Feb. 28, 1975). In that footnote,

GALLAGHER, Associate Judge, concurring:

I agree that an equitable relief should be fashioned for the petitioners in *Hudson, Matthews* and *Mack.* I reserve my opinion on *Naughton* until such time as there may be a record here on review after further proceedings. As to the first three appellees, Hudson, Matthews and Mack, I agree that we should undertake to "make them whole." [1] The equitable remedy being invoked by the court may well be a suitable method to accomplish that purpose. I will await the result of the further proceedings, however, before I reach a final conclusion. I am assuming that in the process a searching review will be made by counsel of the experience gathered by the many states which utilize this and similar remedies. [2]

MACK, Associate Judge, with whom KELLY, Associate Judge, joins, concurring:

I question the conclusion that sealing is the more appropriate remedy. I reject the rationale advanced in support of that conclusion. I favor expungement as a remedy being less cumbersome, more trustworthy, and certainly more satisfactory, psychologically, in making a movant whole. In a complex society where computers go awry, and where an inquiry regarding arrests may have the effect of violating federal law, (see *Gregory v. Litton Systems, Inc.,* 316 F.Supp. 401 (C.D.Cal.1970), *aff'd and modified on other grounds,* 472 F.2d 631 (9th Cir. 1972)),* I see nothing wrong with permitting an innocent victim of an erroneous apprehension or record to say he has not been arrested.

Because, however, I strongly believe that an equitable remedy is sorely needed for cases of this kind, I concur in the majority opinion.

reference is made to a summary of pertinent state laws prepared by the Library of Congress Congressional Research Service. That summary is readily available.

* *See also Green v. Missouri Pacific Ry. Co.,* 523 F.2d 1290 (8th Cir. 1975).

FERREN, Associate Judge, with whom NEWMAN, Chief Judge, joins, concurring:

I concur in Judge KERN's opinion with one exception: I do not share the view that D.C.Code 1973, § 4-137,[1] coupled with an obligation of comity, provides a reason to favor sealing over expungement. As I read it, § 4-137, while generally providing for retention of police records, is fundamentally a procedural statute authorizing an orderly document destruction program. *See Sullivan v. Murphy,* 156 U.S.App.D.C. 28, 61–63, 478 F.2d 938, 971–73, *cert. denied,* 414 U.S. 880, 94 S.Ct. 162, 38 L.Ed.2d 125 (1973). It does not limit this court's broad equitable power to act here. *See Menard v. Saxbe,* 162 U.S.App.D.C. 284, 290, 498 F.2d 1017, 1023 (1974); *Sullivan v. Murphy, supra,* 152 U.S.App.D.C. at 63, 478 F.2d at 973. Nor does comity, a concept of forbearance—of deference to the other branches of government—provide a satisfactory reason to deny an aggrieved person the expungement of his or her arrest record, if that is the most suitable remedy. As I see it, therefore, this court has the unfettered authority—indeed the responsibility—to adopt the remedy it believes to be most just.

Given this free rein, I nevertheless agree that sealing is the best remedy. With a properly designed sealed record system, we can accomplish the goals of expungement without taking an unnecessary risk that someone will have other records of the arrest which cannot effectively be refuted, absent court-ordered access to the official file.

Any evaluation of the remedy should begin with a recognition that neither expungement nor sealing will be foolproof; there is bound to be leakage. In the first place, these cases concern only Metropolitan Police Department central criminal records, D.C.Code 1973, § 4-134a, and District of Columbia court records; we are not asked to expunge "arrest books" at police precincts. D.C.Code 1973, § 4-134(4). Moreover, no one reasonably can expect that police officers, judges, relatives, neighbors, reporters, or others who learn about an arrest will forget about it, let alone destroy all newspaper accounts or personal records of it. Furthermore, when a court orders the MPD to retrieve an already-disseminated arrest record from other law enforcement agencies, whether for expungement or sealing, I am not confident that the other agencies will absolutely honor the request in every case; in fact, by the time a retrieval order is entered, one or more agencies may have passed the records on to still others beyond reach of the MPD or the District of Columbia courts. Thus, whether we speak of sealing or expungement, the remedy will have its loopholes, however few or inaccessible.

This suggests a serious drawback to any expungement scheme. There will be no way to recreate and verify a destroyed official file of an erroneous arrest, in order to refute the memory, newspaper clippings, or other personal records of someone who, for a variety of motives (perhaps even honorable ones), may choose to publicize that arrest. If, however, we authorize a tightly controlled system for sealing erroneous arrest records, we shall provide the functional equivalent of the most feasible expungement scheme, as these records cannot be reopened without a court order based on a finding of "compelling need." At the same time, by also providing the moving party with a court order containing detailed findings of fact and a legal conclusion of innocence, this system will assure both a court-certified explanation and, if needed, complete access to the official file. Sealed arrest records, unlike expunged ones, *can* be reopened to protect against injustice. The whole truth will be preserved.[2]

---

1. *D.C.Code 1973, § 4-137, provides:*

   All records of the Metropolitan Police force *shall be preserved,* except that the [Commissioner of the District of Columbia] [now Mayor], upon recommendation of the major and superintendent of police, may cause records which it considers to be obsolete or of no further value to be destroyed.

2. Conceptually, perhaps, we could couple expungement with detailed findings of fact and a legal conclusion of innocence to protect against possible misunderstandings, but that would ac-

Finally, we should note the following provision in the District of Columbia statute on the sealing of juvenile records, D.C.Code 1978 Supp., § 16–2335(c):

> Upon the entry of the [sealing] order, the proceedings in the case shall be treated as if they never occurred. All facts relating to the action including arrest, the filing of a petition, and the adjudication, filing, and disposition of the [Family] Division shall no longer exist as a matter of law. The Division, the law enforcement department, or any other department or agency that received notice under subsection (b) and was named in the order shall reply, and the person who is the subject matter of the records may reply, to any inquiry that no record exists with respect to such person.

Although Judge KERN'S opinion explains the virtues of equipping the arrested person with an exculpatory court order, solely for his or her use as needed, I do not understand the opinion to preclude a court-ordered provision similar to § 16–2335(c) as part of our final disposition of this case. In fact, such a provision is implicit, for any remedy must provide directions to the recordkeeper, whose response to inquiries must be consistent with the purposes of sealing.

Separate Statement by NEBEKER, Associate Judge, with whom HARRIS, Associate Judge, and REILLY, Chief Judge, Retired, join:

There are three aspects of the interim opinion of the court with which I am in agreement: (1) that we must presume that arrest records, as such, have an appropriate role in law enforcement; (2) that we should not order the executive branch of government to destroy Metropolitan Police Department records; and (3) that we cannot permit nor purport to permit an arrestee to lie about the fact of his arrest at a future time. With respect to the rest of the interim opinion, I reserve the right to file a statement of views upon final disposition of these cases.

tually amount to a culled and sealed record which would probably satisfy no one. I do not

understand the proponents of expungement to advocate that approach.