Fay M. HENSON, Petitioner,

v.

DISTRICT OF COLUMBIA DEPARTMENT OF CONSUMER AND REGULATORY AFFAIRS, Respondent.

No. 87–1321.

District of Columbia Court of Appeals.

Argued April 25, 1989.

Decided June 22, 1989.

---

Gary C. Adler for petitioner. John J. McDermott filed a brief for petitioner.

Charlotte M. Brookins, Asst. Corp. Counsel, with whom Frederick D. Cooke, Jr., Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, were on the brief, for respondent.

Before NEWMAN, TERRY and STEADMAN, Associate Judges.

STEADMAN, Associate Judge:

This is an appeal from a decision of the District of Columbia Department of Consumer and Regulatory Affairs, ordering the involuntary discharge of 97–year–old Fay Henson from the Chevy Chase House, the "community residence facility"[1] in which she has lived for the past eight years. Since we find that the need for the discharge was not proven by the statutorily mandated standard of "clear and convincing evidence," D.C.Code § 32–1433(c) (1988),[2] we reverse.

D.C.Code § 32–1431(a) (1988) provides that a facility may require the discharge of a resident only:

(1) If essential to meet that resident's documented health-care needs or to be in accordance with his or her prescribed level of care;

(2) If essential to safeguard that resident or 1 or more other residents from physical or emotional injury;

(3) On account of nonpayment for his or her maintenance ...;

(4) If essential to meet the facility's reasonable administrative needs and no practicable alternative is available; or

(5) If the facility is closing or officially reducing its licensed capacity.

The basis for the agency's decision, as we understand it, was that Mrs. Henson's discharge was "essential ... to be in accordance with her prescribed level of care," pursuant to the first above-quoted subsection of D.C.Code § 32–1431(a) (1988). We therefore look to the record to determine whether it contains clear and convincing evidence that a particular level of care has been prescribed and by whom.[3] The order noted that the "[f]acility's discharge of the Resident was based on an ICF level of care determination[4] prescribed by Dr. Choisser, the Resident's own physician" and that the burden of proving the change in her level of care was "met by the existence of

---

1. A community residence facility is a facility providing living arrangements for individuals who are ambulatory and able to perform the activities of daily living with minimal assistance. The definition includes facilities ... which provide a sheltered living arrangement for persons who desire or require supervision or assistance within a protective environment because of physical, mental, familial, or social circumstances, or mental retardation. 22 D.C.M.R. § 3099.1 (1986).

2. That subsection permits discharge if "the existence of a ground listed in § 32–1431(a) has been proven by clear and convincing evidence." Section 1431(a) is quoted in the text of this opinion.

3. If the ground for relocation is a prescribed change in the resident's level of care, "the person(s) responsible for prescribing that change shall have the burden of proof...." D.C.Code § 32–1433(b) (1988).

4. ICF is shorthand for "intermediate care facility," defined in 22 D.C.M.R. § 3099.1 as a facility primarily engaged in providing "professional nursing services ... under the direction of a physician to individuals who do not have an illness, disease, injury, or other condition that requires the degree of care and treatment which a hospital or skilled nursing facility is designed to provide."

the DCRA Medical Certification Form signed by Dr. Choisser."[5] Dr. Choisser did not personally testify at the hearing.[6]

The Medical Certification Form accorded such weight in the decision is in fact somewhat ambiguous, and is apparently contradictory to other, more fully articulated evidence also attributed to Dr. Choisser. The record contains three such forms, all completed by Dr. Choisser. The form begins with the statement "I certify the Community Residential Facility placement eligibility of: ___." This language, prominently set forth near the head of the form, is in itself inconsistent with the use of the form as evidence that the signing physician is a proponent of a transfer *out* of a Community Residential Facility. The form continues by listing different capabilities, such as eating, mobility, etc., and asks the completing physician to check the box corresponding to the degree of the patient's capacity, *i.e.*, independent, with assistance, etc. In the section focused upon by the agency, question number 10, the physician is asked to make a determination as between three different types of facilities (community residence (CRF), intermediate care (ICF), and skilled care (SCF)). Given the phrasing of the question, however, which asks "Resident: can be assisted safely and adequately within a: CRF; ICF; SNF [check one]," it is not clear precisely what meaning should be ascribed to the response of the physician, and in particular whether a level of care was being definitively "prescribed". While on a form dated March 2, 1987, Dr. Choisser checked the CRF box, on another form, dated April 23, 1987, he did not check the CRF box, but rather checked the ICF box, as he did on a third form, dated August 25, 1987. It was this act of checking the ICF box in response to the ambiguous question posed in number 10 on which the agency relied in stating in its order that "[t]he Resident's own physician was responsible for prescribing a change in her level of care."

The order makes no reference whatsoever to a July 21, 1987 letter signed by Dr. Choisser, which describes Mrs. Henson's capabilities in greater detail than permitted by the Medical Certification Form, and which concludes "I see no reason why she should not continue to reside in Chevy Chase House with complete safety.... It is my opinion that a change in her residence, at this stage in her life, would prove harmful to her emotionally and I strongly suggest that she be left as she is." While it is ultimately for the factfinder to determine what weight to accord a given piece of evidence, the failure of the agency to even comment on the letter in its final order renders its analysis deficient, particularly since fully elucidated written testimony would seem to carry higher evidentiary weight than checkmark responses on a pre-printed form. *Cf.* RESTATEMENT (SECOND) OF CONTRACTS § 203(d) (1981) (in interpreting meaning of agreements, "separately negotiated or added terms are given greater weight than standardized terms or other terms not separately negotiated").

We have described the standard of "clear and convincing evidence" as requiring a "degree of persuasion much higher than 'mere preponderance of the evidence' but still somewhat less than ... 'beyond a reasonable doubt,'" and have defined the standard as that evidence which will "'produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established,'" *District of Columbia v. Hudson,* 404 A.2d 175, 179 & n. 7 (D.C. 1979) (en banc) (citations omitted); *In re D.I.S.,* 494 A.2d 1316, 1326 (D.C.1985). Given this standard, we cannot uphold the agency's determination that the burden of proving that a discharge was necessary was "met by the existence of the Medical Certification Form[s]," where there was

5. While there was somewhat conflicting testimony in the record about various aspects of Mrs. Henson's condition and capabilities, it appears the agency viewed the ultimate issue before it as one of the "prescribed" level of care, with Dr. Choisser responsible for the prescribing.

6. A person contesting a proposed discharge is entitled to a hearing under D.C.Code § 32–1433 (1988).

present in the record an unexplained letter much to the opposite effect by the same individual who signed the forms relied upon, and where the forms themselves contained internally contradictory and ambiguous elements. Such evidence does not rise to the level of "clear and convincing" as mandated by the statute, D.C.Code § 32–1433(c).[7] We therefore must set aside the discharge order.

*Reversed.*

---

**7.** *See infra* note 2. Indeed, it is not certain the agency itself would term the evidence "clear and convincing". The order is silent as to the evidentiary standard being applied and makes no mention of D.C.Code § 32–1433(c).