**Sylvia SEPULVEDA–HAMBOR,**
**Appellant,**

v.

**DISTRICT OF COLUMBIA, Appellee.**

**No. 04–CT–103.**

District of Columbia Court of Appeals.

Argued Sept. 15, 2005.
Decided Oct. 20, 2005.

26. We decline the Bar's invitation to decide Sitcov's constitutional claims, which he has not raised in these proceedings. Although we

think it is appropriate for this court to address all of the parties' contentions involving interpretation and application of our Bar Rules and of the BOG's by-laws under our "inherent authority to define, regulate, and control the practice of law" in the District of Columbia, we are not prepared to entertain constitutional contentions which Sitcov raised before the United States District Court, but not before this court.

Christopher G. Hoge, Washington, DC, for appellant.

Sidney R. Bixler, Assistant Attorney General, with whom Robert J. Spagnoletti, Attorney General, Edward E. Schwab, Deputy Attorney General, and Rosalyn Calbert Groce, Assistant Attorney General, were on the brief for appellee.

Before WASHINGTON, Chief Judge, and TERRY and KRAMER, Associate Judges.

KRAMER, Associate Judge:

In this case, the appellant, Sylvia Sepulveda–Hambor, asserts that the trial court abused its discretion in denying her motion to seal records pertaining to her arrest for failure to obey an order of a police officer.[1] The denial of the motion came following a non-jury trial where the appellant was acquitted of the failure to obey charge. The trial court judge that denied the appellant's motion to seal her arrest records was the same judge that had acquitted the appellant after hearing the evidence in the trial on the failure to obey charge. We hold that the trial court did not abuse its discretion in concluding that no hearing was necessary, or in denying the motion to seal.

The testimony at the trial provides the background for the issues raised. Officer Dunlop, who had arrested the appellant, was the sole witness for the government. He testified that the events at issue occurred around 8:00 a.m. during morning rush hour. On that day, he was part of a

---

1. The regulation under which the appellant was charged is 18 DCMR § 2000.2, which provides in pertinent part:

 No person shall fail or refuse to comply with any lawful order or direction of any police officer ... invested by law with authority to direct, control, or regulate traffic. This section shall apply to pedestrians and to the operators of vehicles.

 The penalty is prescribed by 18 DCMR § 2000.10, which can be a fine of $100 to $1000.

motorcade escorting Vice–President Cheney to work at the White House. There were three police officers at the front of the motorcade spaced about half a block apart. Officer Dunlop was the third. As the motorcade drove north up Fifteenth Street near Pennsylvania Avenue, he noticed the appellant's car in the fourth lane—a left-turn-only lane—facing the motorcade. Before he reached the appellant, he observed the first two officers motioning her to move to the curb as they passed her, and from their actions, could ascertain that they were shouting at her to do so. Officer Dunlop testified that he passed close by the appellant's car, and yelled for her to pull over. As he did so, he distinctly saw the appellant look at him and make an obscene gesture (colloquially known as "giving him the finger"). He continued up Fifteenth Street, and, observing her in his rearview mirror, noted that she never pulled to the curb. When the Vice–President had safely been delivered onto the White House grounds, Officer Dunlop turned back immediately to pursue the appellant, following her on Pennsylvania Avenue, and catching up with her as she was turning onto Seventh Street.

The appellant's testimony differed in material respects from Officer Dunlop's. She testified that having dropped her husband at the Treasury Department on Fifteenth Street, Northwest, she drove south, intending to turn left onto Pennsylvania Avenue and drive the nine or so blocks to her own place of employment at Sixth and D Streets, Northwest. As she headed south on Fifteenth Street approaching Pennsylvania Avenue, she heard sirens and noted that vehicles were moving "slowly" north toward her through light morning traffic. She testified that because of an eye problem that caused her to have spasms if she looked at blinking lights, she simply stopped her car in the third lane from the curb (which was a lane from which a car could either turn left or go straight) and averted her eyes from the blinking lights on the police cars. Out of her peripheral vision, she was startled to see two police officers gesturing to her to move to the right as they drove northward on her left. Still startled, she saw a third officer pass, then heard a pounding on the rear of her car. She did not have any kind of communication with the officers, nor did she make any obscene gesture. After hearing the bang on her car, she recovered her composure and, realizing that traffic had pulled over to the right, she herself immediately pulled over to the far right curb as well. When the motorcade had gone by, she turned left on Pennsylvania Avenue, and drove to Seventh Street, where she again turned left. As she was turning, an officer whom she later identified as Officer Dunlop, pulled her over, accused her of making an obscene gesture at him and placed her under arrest. The appellant denied ever making such a gesture, and testified that although originally startled into inaction by the blinking lights and the sudden appearance of the three officers, she shortly thereafter drove to the curb. Certainly, she testified, it was never her intention to disobey the order of a police officer. In support of her case, the appellant called three character witnesses to confirm that she was a peaceable, law-abiding, truth-telling individual.

Both the appellant and Officer Dunlop agreed that after stopping her on Seventh Street, he placed the appellant under arrest, handcuffed her, arranged for her car to be parked at a safe location and had her transported to a police station. The officer charged the appellant with failing to obey an order of a police officer. They disagreed about whether or not she was offered citation release from the station.

In announcing his ruling at the conclusion of the trial, the trial judge found that

there were "two conflicting versions of the facts here given by two individuals [who] on the face of which both appear to be truth-telling individuals." The trial judge pointed out that the officer had "no reason to come in to fabricate his story." With respect to the appellant, he noted that she "appears to be an individual who is a truth telling individual." Thus, he concluded, "it boils down to whether there might be some mistake on somebody's part." He was "concerned" by the officer's testimony that he saw her hold "up her middle finger when he told her to move to the right," and concluded that this "would clearly indicate that she knew she was supposed to [move to the right] and she was telling the officer in effect I know what you're telling me to do [and] I'm not going to do it." While the judge concluded that he was "totally satisfied" the officer was "not lying," he was willing to entertain the possibility that "some movement [the appellant] made in the car … caused him to believe that she was holding up this middle finger and telling him, in effect, that I'm not going to comply with your order." In the end, the judge called it "a close case," but concluded the testimony of the character witnesses caused him to have a reasonable doubt of her guilt.

Following her acquittal, the appellant filed a motion to seal her arrest record, with supporting affidavits which she referred to as "declarations." The trial judge denied the motion, ruling that this was an issue of credibility, and that he could not find by "clear and convincing evidence" that the appellant had not committed the offense of failing to obey the order of a police officer.

On appeal, the appellant argues that the trial court erred not only by declining to hold a hearing, but also by concluding that the additional factual materials that she submitted in connection with the motion did not entitle her to have her arrest rec-ord sealed. Having reviewed the testimony at trial and the submissions made by the appellant in connection with her motion to seal, we conclude that the trial court did not abuse its discretion in declining to hold a hearing, and that the decision of the trial judge was amply supported by the record.

 With respect to the appellant's complaint that the trial court failed to hold a hearing on her motion to seal, the law is clear: "Where a trial court determines that a hearing would not result in evidence sufficient to meet the clear and convincing standard required for the sealing of arrest records, the court may in its discretion deny the request for a hearing." *Dawkins v. United States*, 535 A.2d 1383, 1386 (D.C. 1988); *see also Burns v. United States*, 880 A.2d 258, 263 (D.C.2005) ("Whether to hold an evidentiary hearing is a decision committed to the discretion of the trial court, based on the quality and nature of the evidence presented."); *White v. United States*, 582 A.2d 1199, 1201 (D.C.1990) ("The trial court enjoys broad discretion in deciding whether to hold a hearing on a motion to seal an arrest record."). "[T]he concept of 'exercise of discretion' is a review-restraining one. The appellate court role in reviewing 'the exercise of discretion' is supervisory in nature and deferential in attitude." *United States v. Hamid*, 531 A.2d 628, 646 (D.C.1987) (quoting *Johnson v. United States*, 398 A.2d 354, 362–63 (D.C.1979)).

In his written order denying the motion to seal, the trial court explicitly stated not only that he had "a clear recollection of petitioner's trial," but also that the court could not "perceive anything that could be presented at such a hearing that is not already in the voluminous record." Thus, his decision that no hearing was necessary fell squarely within his discretion.

 Whether or not a hearing is held in connection with a motion to seal, a trial

court's determinations in connection with that motion "constitute findings of fact" and are reviewed for clear error. *Burns*, 880 A.2d 258, 260–261 (quoting *District of Columbia v. Davis*, 811 A.2d 800, 802 (D.C. 2002)). Thus, the next issue before us is whether the trial court's order denying the motion was "plainly wrong or without evidence to support it." *Id.* (citing and quoting D.C.Code § 17–305(a) (2001)).

In considering that issue, we look first to the seminal case of *District of Columbia v. Hudson*, 404 A.2d 175, 177 (D.C.1979) (en banc),[2] in which we addressed issues surrounding the maintenance of arrest records where, unlike the instant matter, the person arrested was not ultimately prosecuted. *Hudson* held that to obtain the sealing of an arrest record, the movant must show by clear and convincing evidence[3] that the crime for which he was arrested did not occur or that he did not commit it. 404 A.2d at 175, 179, 182. This holding has been applied in numerous subsequent cases involving motions to seal arrest records where the arrest was not ultimately prosecuted.[4]

Although *Hudson* provides background and guidance for the present matter, it is actually *Rezvan v. District of Columbia*, 582 A.2d 937, 938 (D.C.1990), which directly addresses the issue of how to determine whether an arrest record should be sealed after the charges have been tried and the accused has been acquitted. In *Rezvan*, as in this case, the appellant was acquitted following a trial. The appellant then moved to have his arrest record sealed, and his motion was denied by the trial court.

On appeal, this court held that to qualify for sealing after a matter has proceeded to trial, a "movant must meet an even higher standard than when prosecution terminates before trial." *Id.* at 938. Not only must the movant show by clear and convincing evidence that the arrest was based on mistaken identity or that no crime had in fact been committed, as set out in *Hudson*, but the movant must also "establish the existence of some other circumstance that would make it manifestly unjust to decline to seal the arrest record in question." *Id.* Examples given in *Rezvan* were "that the arrest was made without probable cause, that the arrest was otherwise in violation of constitutional rights, or that there was bad faith on the part of the prosecutor in continuing with the prosecution." *Id.*[5] Thus, the appellant had a heavier burden to meet below than if the prosecution had not gone forward.[6]

The appellant asserts that her declarations, documents and factual analyses submitted in connection with her motion to

---

2. *See also District of Columbia v. Hudson (Hudson II)*, 449 A.2d 294, 295 (D.C.1982) (en banc) (affirming prior decision, but declining to impose procedural rules for sealing cases).

3. We cited *In re Estate of Soeder*, 7 Ohio App.2d 271, 310, 220 N.E.2d 547, 574 (1966), noting that "clear and convincing evidence" should "produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established." *Hudson*, 404 A.2d at 179 n. 7.

4. *See, e.g., Burns*, 880 A.2d at 260; *Rose v. United States*, 879 A.2d 986, 989 (D.C.2005); *District of Columbia v. Houston*, 842 A.2d 667, 670 n. 4 (D.C.2004); *Davis*, 811 A.2d at 802.

5. Indeed, such an allegation is a necessary predicate "to prompt the trial court to exercise its discretion in favor of holding a hearing." *Rezvan*, 582 A.2d at 938.

6. The appellant attempts to circumvent the "heavy burden" placed on those attempting to obtain sealing of their arrest records by recasting the *Hudson* standard to entail an individualized balancing the needs of a petitioner to have his or her arrest record sealed against the needs of law enforcement to know of the arrest. To do so, she takes out of context

seal met that test and established that Officer Dunlop's trial testimony was "incorrect, inherently improbable, inconsistent with other testimony or facts, and/or reflect conclusory opinions." In his written opinion denying the relief requested, the trial judge wrote that he had "gone over the record and [found] nothing therein which would cause him to find by clear and convincing evidence that she did not commit the offense."[7] We agree.

There was nothing new in those declarations with respect to the actual offense charged, but rather a re-hashing of the testimony previously heard by the trial court and a re-arguing of the inferences to be drawn from those facts. The bottom line remained that the testimony of the police officer and the appellant conflicted on the issue of whether or not she had made the obscene gesture to Officer Dunlop, indicating her unwillingness to obey his order to move over, and whether or not she had indeed ever pulled over to the right-hand lane. The trial judge was unable to resolve that conflict in the appellant's favor by clear and convincing evidence, a conclusion that was amply supported by the record.[8]

We also concur with the trial court's judgment that the appellant failed to make the second showing required by *Rezvan*—

language from *Hudson* concerning balancing the interests of the individual with the interests of law enforcement. *See* 404 A.2d at 179, 181–182. *Hudson* concluded that to provide an appropriate balance between the interests of individuals and the interests of law enforcement, arrest records should only be sealed after a finding of "clear and convincing evidence" that no crime had been committed or that the arrested person was not the one who did it. There is no suggestion in *Hudson* or its progeny that the interests of one individual will be balanced on a case-by-case basis against the needs of law enforcement. This is simply not the procedure set out by *Hudson*, or *Rezvan*, or any of the many other cases addressing the issue of sealing subsequent to *Hudson I*, and this court rejects such an approach as inconsistent with the long-standing case law of this jurisdiction.

7. In his written order denying the appellant's motion, the trial court noted that he had "a clear recollection of [the] trial," that he had heard the testimony of Officer Dunlop, who "was in a position to observe what had transpired and who came across as a credible witness," that the court had "struggled with [the] decision," and that ultimately the "strength of the [petitioner's] three character witnesses" had caused him to conclude that there was "a reasonable doubt as to the petitioner's guilt." As the trial court explained, a reasonable doubt about guilt, however, is "far different from an affirmative finding that no crime occurred or that the petitioner's arrest was based on mistaken identity." Moreover, the court concluded that it could not "per-

ceive anything that could be presented at such a hearing that is not already in the voluminous record." Thus, the court concluded, it found "nothing therein which would cause it to find by clear and convincing evidence that she did not commit the offense, that there was no probable cause for the arrest, that any of her constitutional rights have been violated, or that there was bad faith on the part of the prosecutor in going forward with the prosecution."

8. Relatedly, a petitioner cannot establish a basis for sealing an arrest record if any crime was committed, regardless of whether the petitioner was charged therewith. *See Burns*, 880 A.2d at 260; *Rose*, 879 A.2d at 989; *Villavicencio v. United States*, 755 A.2d 436, 438 (D.C.2000) (citing *Hudson*, 404 A.2d at 179). The District of Columbia Municipal Regulations provide:

Upon the immediate approach of an authorized emergency vehicle making use of audible and visual signals meeting the requirements of this title, or of a police vehicle properly and lawfully making use of an audible signal only, the driver or every other vehicle shall yield the right-of-way and shall immediately drive to a position parallel to, and as close as possible to, the right-hand edge or curb of the roadway, clear of any intersection, and shall stop and remain in such position until the authorized emergency vehicle has passed, except when otherwise directed by a police officer.

22 DCMR § 2210.1. It would appear that the appellant's actions would have also placed her in violation of this regulation.

that there exists "some other circumstance that would make it manifestly unjust to decline to seal the arrest record in question, for example, that the arrest was made without probable cause, that the arrest was otherwise in violation of constitutional rights, or that there was bad faith on the part of the prosecutor in continuing with the prosecution." *Rezvan,* 582 A.2d at 938. The trial court's findings clearly establish probable cause, since at the very least the trial court made clear that the officer was acting in good faith and believed that his order to pull over was being thwarted. Nor is there any persuasive evidence that the prosecutor was pursuing this matter in bad faith, or that the appellant's constitutional rights were violated..

In this connection, the appellant has made much of the fact that Metropolitan Police Department Special Order 96–10 (July 10, 1996) provides that "[i]n most circumstances, officers shall not summarily arrest a person who has violated the 'Failure to Comply' provision." Rather, such arrests shall only occur "in a situation where the continued refusal creates a flagrant and immediate danger to the violator, other persons or the motoring public, or interferes with ongoing traffic enforcement activities of the police." [9] *Id.* Apart from the fact that the Special Order provides that an officer is specifically permitted to exercise "prudent judgement" [sic]

in deciding whether or not to make an arrest for the offense of Failure to Obey, the longstanding interpretation of Police Orders in this jurisdiction is that they are "internal mandates" that "properly are to be enforced by the appropriate authorities within the [police] department, and not by appellate courts." *March v. United States,* 362 A.2d 691, 698 n. 8 (D.C.1976). Internal mandates are no more than that,[10] and cannot be equated with constitutional rights. Moreover, as the Supreme Court held in the case of *Atwater v. City of Lago Vista,* 532 U.S. 318, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001):

> If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender.

*Id.* at 354, 121 S.Ct. 1536.[11]

Thus, the trial judge acted within the appropriate limits of his discretion in rejecting the appellant's arguments. Accordingly, the order of the trial judge denying the appellant's motion to seal (referred to as a motion for expungement) is

*Affirmed.*

---

**9.** The Special Order also includes the language: "The decision as to whether to make a summary arrest under these circumstances shall be based upon the prudent judgement [sic] of the member whose order was refused."

**10.** To elaborate, we wrote in *March:*

> However desirable the policy embodied in the Police General Orders may be, these regulations cannot be construed as extensions or modifications of the statutory language. Internal mandates such as these orders properly are to be enforced by the appropriate authorities within the depart-

ment, and not by appellate courts which have no direct supervisory authority over such day-to-day law enforcement activities. 362 A.2d at 698 n. 8.

**11.** In *Atwater,* the Supreme Court addressed the proposal that there be a line drawn between "jailable" and "fine-only" offenses, that is, between those that could result in commitment and those that could not. The Court concluded that this was an impractical approach, since the officer on the street might not be aware of facts necessary for making that distinction. *Id.* at 348–349, 121 S.Ct. 1536.